### DOVER et al. v. GREENWOOD et al.

(Circuit Court, D. Rhode Island. March 7, 1910.)

No. 2,664.

**1. EVIDENCE (§ 575*)—EVIDENCE GIVEN IN FORMER CASE.**

On both principle and authority, in a court of chancery as in a court of law, testimony given in a former trial is regarded as secondary evidence, and is incompetent unless a foundation for its admission is laid.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2407–2409; Dec. Dig. § 575.*]

**2. PATENTS (§ 114*)—SUIT IN EQUITY TO OBTAIN PATENT—EVIDENCE.**

A suit brought under Rev. St. § 4915 (U. S. Comp. St. 1901, p. 3392), to obtain the issuance of a patent, is a plenary suit in equity, to which all the rules of practice and evidence in such suits apply, and a party cannot be deprived of the right given him by equity rule 67 to cross-examine opposing witnesses by the introduction of the proofs taken in interference proceedings, unless a showing of necessity is made for their introduction as secondary evidence.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 166; Dec. Dig. § 114.*]

**3. EVIDENCE (§ 581*)—EVIDENCE GIVEN IN FORMER CASE—GROUNDS FOR ADMISSION.**

The testimony of a party that he does not know the whereabouts of a desired witness, without showing any effort to ascertain, or to procure his testimony, is insufficient as a basis for the introduction of the testimony of such witness in a former case as secondary evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2416; Dec. Dig. § 581.*]

**4. PATENTS (§ 91*)—SUIT IN EQUITY TO OBTAIN PATENT—EVIDENCE CONSIDERED.**

Evidence considered in a suit under Rev. St. § 4915 (U. S. Comp. St. 1901, p. 3392), to obtain the issuance of a patent, and *held* to establish complainant's claim to priority of invention and his right to a patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 123; Dec. Dig. § 91.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by George W. Dover and others against Thomas F. Greenwood and others. On final hearing. Decree for complainants. See, also, 154 Fed. 854.

Horatio E. Bellows and Alex. P. Browne, for complainants.
Wilmarth H. Thurston, for respondents.

BROWN, District Judge. This is a bill in equity under section 4915, Rev. St. (U. S. Comp. St. 1901, p. 3392).

On demurrer the defendants contended that section 4915 had been repealed by Act Feb. 9, 1893 (27 Stat. 436), creating the Court of Appeals of the District of Columbia. This contention was overruled by the opinion of this court, reported in 143 Fed. 136. See, also, Appert v. Brownsville Co. (C. C.) 144 Fed. 117, and the opinion of the Circuit Court of Appeals for this circuit in Prindle v. Brown, 155 Fed. 531, 84 C. C. A. 45.

Upon the overruling of the demurrer, the complainants proceeded to take testimony pursuant to equity rule 67. Thereafter the defendants moved that an order be entered directing that evidence taken in interference proceedings in the Patent Office be made part of the evidence in this case, stating that the purpose of the motion was:

"That the defendants may be advised whether it will be necessary for them to retake for the purposes of this case the testimony of witnesses already fully taken in said interference case."

This motion was denied, and an opinion handed down to the effect that the testimony offered was secondary evidence, and could not be used unless upon a showing that the testimony of the witnesses was not obtainable in the present case. This opinion is reported in 154 Fed. 854.

At the final hearing the complainants submitted their case upon the proposition that Dover's application, filed in the Patent Office September 11, 1901, establishes for Dover a date of invention earlier than any date proven as the date of Greenwood's invention. The defendants at the hearing still insisted upon their right to prove their case by evidence taken on behalf of Greenwood in the interference proceedings. They rely upon the proposition that it is the general rule to admit in evidence in a case between the same parties or their privies, and involving the same subject-matter, depositions taken in a previous case. In support of this proposition they cite 3 Greenleaf on Evidence, pp. 343–354; 16 American Dig. p. 1271, § 288, and cases cited; also, Atkins v. Anderson, 63 Iowa, 739, 19 N. W. 323; McCormick v. Howard, 15 Fed. Cas. 1306–1308.

The defendants' brief, however, does not give due consideration to the question whether such evidence will be received without a showing that the witnesses are not available in the present suit. Ecaubert v. Appleton, 67 Fed. 917, 15 C. C. A. 73, was a suit in equity, in which the Circuit Court of Appeals for the Second Circuit sustained an objection to the admission of testimony given in interference proceedings, without proof that the witnesses were dead or unavoidably absent.

In Stonemetz v. Brown Co. (C. C.) 57 Fed. 601, it was held that in a suit in equity certain testimony taken in interference proceedings was

inadmissible. Clow v. Baker (C. C.) 36 Fed. 692, was also a suit in equity, in which a motion to use depositions taken in interference proceedings was denied.

Each of these cases is directly in conflict with the defendants' proposition that it is the general and unqualified rule to admit in a case between the same parties evidence taken in a previous case. The defendants attempt to distinguish these cases upon the ground that they were not upon bills in equity under section 4915. The rules governing the admissibility of evidence in equity are general rules, and the defendants to support the contention as to the general rule cite cases which were not upon bills in equity under section 4915.

The defendants' second proposition, that there are special considerations pertaining to a bill under section 4915, is a distinct proposition, and should not be confused with the first proposition advanced by defendants as to the general rule of evidence. The limitations upon the right at common law to use such testimony are stated in the opinion in West v. Louisiana, 194 U. S. 258, 24 Sup. Ct. 650, 48 L. Ed. 965.

In the discussion of the topic "Former Evidence," in 16 Cyc. 1088, it is stated that one of the necessary conditions is that a sufficient reason is shown why the original witness is not produced, and that this is necessary to justify the court in receiving it. See, also, our former opinion (154 Fed. 854).

The important question is whether under the rules and practice of the chancery court a different rule prevails, so that such former testimony is receivable, irrespective of the ability of the party offering it to produce the witnesses in the present cause.

There is no question of the defendant's right to use any part of the interference record to prove admissions of the complainants or inconsistencies between the testimony given by the complainants' witnesses in this proceeding and their testimony given in the interference proceedings. See Dover v. Greenwood (C. C.) 154 Fed. 854, 855.

The question arises concerning the defendants' attempt to prove its case or portions thereof by testimony taken in their behalf in a former case.

Section 4915, Rev. St., provides a "remedy by bill in equity."

Section 862, Rev. St. (U. S. Comp. St. 1901, p. 661), provides:

"The mode of proof in causes of equity and of admiralty and maritime jurisdiction shall be according to rules now or hereafter prescribed by the Supreme Court, except as herein specially provided."

The sixty-seventh equity rule contains the provision:

"Such examination shall take place in the presence of the parties or their agents, by their counsel or solicitors, and the witnesses shall be subject to cross-examination and re-examination, all of which shall be conducted as near as may be in the mode now used in common-law courts."

It is apparent that, if the defendants be allowed to rely upon the proofs taken in interference, the complainants will be deprived of the opportunity to make such cross-examination of the witnesses as they may desire, or as may be competent in the present cause.

The suggestion of the hardship of compelling the defendants to call upon their own behalf in the present suit witnesses whose testimony has

already been taken in interference proceedings is met by the consideration that the complainants ought not to be deprived of the ordinary rights of a complainant in equity, unless from necessity. Clow v. Baker (C. C.) 36 Fed. 692, is directly in point upon the question whether a mere suggestion of inconvenience or of expense is a sufficient ground for permitting the use of the record in the interference case in a subsequent suit in equity.

So far as I have been able to investigate this subject, it seems that both upon principle and authority, in the court of chancery as well as in the court of law, testimony given in a former trial is regarded as secondary evidence. See Gresley's Equity Evidence, 131–174, 184; Taylor on Evidence, 464–471 (9th Ed.) 1897.

The contention that upon a motion for leave to read such testimony the ability of the party to produce the witnesses in the cause is immaterial seems both contrary to principle and to the weight of authority. Taylor on Evidence, § 471; Blagrave v. Blagrave, 1 De G. & Sm. 252; Llanover v. Homfray, 19 Ch. D. 224; Carrington v. Cornock, 2 Sims, 567.

The defendants' brief states, however, that Thomas F. Greenwood, one of the parties to the interference and a defendant in this case, was unavailable, being outside the jurisdiction of this court. The defendant Frederick H. Watkins was asked:

"Q. Have you made any effort to find out whether said Thomas F. Greenwood is now in the city of Providence or in the state of Rhode Island?

"A. Yes.

"Q. And have you been able to locate him anywhere in the state of Rhode Island?

"A. No. * * *

"Q. And do you know whether said Thomas F. Greenwood left the state of Rhode Island about that time; that is, nearly three years ago?

"A. He did.

"Q. And have you ever heard of his returning to Rhode Island within that time?

"A. No.

"Q. And do you know where said Thomas F. Greenwood now is?

"A. No."

The witness also stated that he last saw Greenwood in Rhode Island nearly three years ago, had not since seen him, nor known where he was.

There was no testimony from the other defendant, David M. Watkins, copartner of the previous witness, as to any efforts to secure the testimony of Greenwood or as to knowledge of his whereabouts.

This testimony is an insufficient basis for the introduction of secondary evidence. Stein v. Bowman, 13 Pet. 209–223, 10 L. Ed. 129; 16 Cyc. p. 1098. The testimony as to the availability of the witness Howard P. Chase is also insufficient as a basis for the introduction of his former testimony.

The defendant further contends that, even if under the general rules of evidence the testimony is inadmissible, it is yet admissible on the ground that there are special considerations pertaining to a bill in equity under section 4915 of such a character as to make it not only proper, but necessary, that the record and evidence in the interference should be made a part of the record in such bill in equity:

First. Because a bill in equity under section 4915 constitutes a step in the prosecution of an application for a patent. Gandy v. Marble, 122 U. S. 439, 7 Sup. Ct. 1290, 30 L. Ed. 1223; In re Hien, 166 U. S. 438, 17 Sup. Ct. 624, 41 L. Ed. 1066.

Second. A suit under section 4915 is in the nature of a suit to set aside a judgment. Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657.

Third. It is important and essential that the court should have before it in a suit under section 4915 the preliminary statement which the complainant made in interference proceedings.

This third point is disposed of by our former statement that no question is made of the defendants' right to use any part of the interference record to prove admissions or inconsistencies between present and former testimony, and this has no bearing upon the question of the defendants' right to prove their own case by secondary evidence.

As to the first point, the fact that one of the statutory steps provided as a part of the means for securing a patent is a "suit according to the ordinary course of equity practice and procedure" (see Gandy v. Marble, 122 U. S. 439, 7 Sup. Ct. 1290 [30 L. Ed. 1223]), is wholly insufficient to indicate an intention of Congress to permit a course of practice and procedure contrary to the ordinary course of equity. When Congress in section 4915 provided "a remedy by bill in equity," it thereby by necessary implication adopted the mode of proof provided for all causes in equity by section 862, Rev. St.

As to the second point founded on the suggestion in Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, concerning a suit under section 4915, "it is something in the nature of a suit to set aside a judgment," if the defendant means to contend that this language implies that it is therefore necessary that the court must review the grounds and the evidence upon which that judgment was rendered, the decisions In re Hien, 166 U. S. 432, 17 Sup. Ct. 624, 41 L. Ed. 1066, and Prindle v. Brown, 155 Fed. 531, 84 C. C. A. 45, should be a sufficient answer. See, also, our former decision, 154 Fed. 854.

A case under section 4915 "is prepared and heard upon all competent evidence adduced and upon the whole merits." The evidence must be adduced and its competency passed upon according to the practice of a court proceeding in the exercise of original jurisdiction. In re Hien, 166 U. S. 439, 17 Sup. Ct. 624, 41 L. Ed. 1066.

When Congress by section 4915 transferred from the Patent Office to a court of equity the determination of questions of fact and law in the exercise of original jurisdiction, it clearly manifested an intention to give the parties a strictly judicial trial, and clearly did not intend to create a "special and anomalous" proceeding in equity so far as the modes of proof and procedure are concerned.

It is further argued that section 4915 applies equally to two classes of cases, ex parte cases and inter partes cases—i. e., cases of interference—that in both classes of cases the question to be determined is the same, viz., whether the commissioner or the Court of Appeals, as the case may be, was right in rejecting complainant's application, or whether said complainant upon the record is entitled to receive a patent.

It is further urged that it is the purpose of section 4915 to secure "a review by a court of equity of the decision of the Commissioner of Patents or of the Supreme Court of the District of Columbia, as the case may be, and the judgment of such court of equity as to the correctness of the decision of the commissioner or the Supreme Court of the District of Columbia." This is practically a reiteration of the defendant's original argument on demurrer. It was then argued that, because the proceeding under section 4915 was of the nature of a review, it had been repealed by the act of February 9, 1893, which gave appellate jurisdiction to the Court of Appeals for the District of Columbia.

But it has been decided that section 4915 is still in force, because it is not of the nature of an appeal, but is "wholly different from the proceeding by appeal."

What seems to me the fundamental error in the defendant's argument is the persistent refusal to accept the full force of the very definite decisions of the Supreme Court as to the difference between proceedings under section 4915 and section 4914.

In the defendants' brief it is said of certain witnesses:

"The testimony given by them in this case is not properly additional to, or supplemental of, the testimony given by them in the interference, but, instead, each of said witnesses * * * testifies to an entirely different state of facts from what he testified then."

If we have before us an entirely different state of facts, why should this court be compelled to consider whether previous decisions on different facts were right or wrong?

As we have before observed, the right of the defendants to use former testimony to show admissions and contradictions is not in question. No evidence offered by the defendants for this purpose has been excluded.

If the complainants have made a new case, they have the right to do so, and also the right to such cross-examination of witnesses for the defendants as may be required by the new case, without restriction by the rules governing interference proceedings.

The question whether the commissioner or the Court of Appeals was right or wrong is only in a very loose sense involved in proceedings under section 4915. Neither in ex parte or inter partes proceedings under section 4915 is it essential to determine this. Even if the decision on the former record were correct, the Circuit Court may reach a contrary conclusion on the new record; or, even if the decision were wrong on the former record, the Circuit Court may reach the same conclusion on the new record.

Section 4915 provides a proceeding in the nature of a trial de novo upon the merits. Upon such new trial a contrary conclusion may be reached, or the same conclusion. It does not follow, however, in point of law, that it is any part of the duty of the Circuit Court to adjudge whether the former conclusion is consistent or inconsistent with its own independent judgment.

The question whether the decisions in the Patent Office were correct has been passed upon by the final court of review, the Court of Appeals of the District of Columbia:

The defendants argue that in ex parte proceedings the record upon which the application was rejected must necessarily be before the court, and that, as section 4915 applies to both ex parte and inter partes cases, the rules of procedure must be the same; and therefore it necessarily follows that in inter partes proceedings the record and evidence must likewise form part of the record. But neither in ex parte proceedings nor in inter partes proceedings is the complainant restricted to the case originally presented in the Patent Office or bound by the rules of the Patent Office in the matter of proofs, and in neither class of cases is it necessary to determine the case merely upon the evidence produced before the commissioner. Both classes of cases are tried de novo, and, though the Circuit Court may reach a conclusion different from that of the commissioner or of the Court of Appeals, such difference of conclusion involves neither an affirmance nor a reversal of that conclusion, but simply affords a later adjudication which "shall authorize the commissioner to issue such patent" on compliance with the statute.

Of course, upon a bill under section 4915 the complainants must bring before the Circuit Court such records of the Patent Office or Court of Appeals as are necessary to make a case within the statute, but this is merely for the establishment of rights under section 4915, and in no sense for the purpose of securing a review and a reversal of any previous finding.

The expression in Re Hien, Petitioner, 166 U. S. 439, 17 Sup. Ct. 626 (41 L. Ed. 1066), is:

"The bill in equity provided for by section 4915 is wholly different from the proceeding by appeal from the decision of the commissioner, etc. The one is the exercise of original, the other of appellate, jurisdiction."

The defendant does not duly consider the force of the expression "original jurisdiction" when he contends that, under section 4915, the court is compelled to perform the task of determining whether the former decision was correct.

The fact that the whole subject of review and of appellate jurisdiction is provided for in section 4914 renders the argument that under section 4915 the court must exercise the same jurisdiction as under section 4914, together with some further jurisdiction of an original nature, untenable. It is clearly not the intention that, when the appeal has been fully heard and determined under section 4914, the same question of the correctness of the former decision is to be re-examined and retried in an original suit under section 4915.

The defendants also contend that, according to the practice and procedure in bills in equity under section 4915, the record and evidence in the interference has always been received. Great reliance is placed upon the expression used in Butterworth v. Hoe, 112 U. S. 50–61, 5 Sup. Ct. 25, 31 (28 L. Ed. 656):

"It is not a technical appeal from the Patent Office like that authorized in section 4911, confined to the case as made in the record of that office, but is prepared and heard on all competent evidence adduced and upon the whole merits."

In Gandy v. Marble, 122 U. S. 439, 7 Sup. Ct. 1290, 30 L. Ed. 1223, the same language is repeated.

The argument that, because proceedings under section 4915 are not like those under 4914 confined to the former record, yet they must still contain the entire former record, is both grammatically and logically unsound.

Upon this unsound interpretation the defendants base their next proposition, that the Supreme Court has established the practice and procedure, and that Morgan v. Daniels is a direct authority for the position that the interference record should be before the court.

The defendant also cites Davis v. Garrett (C. C.) 152 Fed. 723. This case, however, relates solely to action taken by the court upon a bill taken pro confesso.

The proper practice in equity under such conditions is stated in Thomson v. Wooster, 114 U. S. 113, 5 Sup. Ct. 788, 29 L. Ed. 105, and Central Railroad Co. v. Central Trust Co., 133 U. S. 83, 10 Sup. Ct. 235, 33 L. Ed. 561. The decree should be made by the court "according to what is proper to be decreed upon the statements of the bill assumed to be true."

It may be questioned whether, if the court should proceed of its own motion to call for proofs made by a defendant in another court, such action could be justified or reconciled with the decisions of the Supreme Court as to proper procedure on bills taken pro confesso. But, as we said in our former opinion, the question of the right of a defendant to prove its case by secondary evidence was not involved in the case of Davis v. Garrett. Where the interference record has been introduced by stipulation, the fact that the court has considered it is of no consequence.

In Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, the case was submitted upon the testimony taken in the interference. It follows, of course, that the decision cannot have the slightest weight upon the question of the right of a defendant to prove his case by secondary evidence which is objected to.

It is quite true that the rule was declared:

"That, where the question decided by the Patent Office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction."

There is nothing in this which supports the contention that the court must review the grounds upon which that decision was reached. On the contrary, it is the fact that a decision has been made after a contest, and that the defendant has been given a patent, that casts upon the complainant the burden of establishing the contrary by testimony that carries conviction.

The patent is prima facie evidence. The court says (page 123, of 153 U. S., page 773 of 14 Sup. Ct. [38 L. Ed. 657]):

"The plaintiff in this case, like the defendant in these cases, is challenging the priority awarded by the Patent Office, and should we think be held as strict proof.

"There is always a presumption in favor of that which has once been decided, and that presumption is often relied upon to justify an appellate court in sustaining the decision below."

It does not follow, however, that, to apply this presumption, the court must have before it the evidence in the former case, or that it must review that testimony.

The complainants stand upon the case made by the bill, answer, and proofs, and that case must be strong enough to carry conviction that Dover was a prior inventor of the combination in issue.

The presumption in favor of that which has been once decided is applied in courts of original jurisdiction as well as in courts having a revisory jurisdiction. Therefore no argument can be drawn from Morgan v. Daniels to the effect that it is necessary that this court have before it the evidence given in interference proceedings in order that it may give proper weight to the fact that a decision has already been rendered in favor of the defendants.

To apply that presumption, and to enforce that rule of proof, it is only necessary that we should know that a decision was reached, and it is not necessary to examine the evidence upon which it is based. It is the decision itself which evokes the rule.

It is also urged that the public interest requires that the court should receive and review the testimony taken for Greenwood in the interference record. That the court may go beyond the issues raised by the parties seems established by the decisions of the Supreme Court referred to in Davis v. Garrett.

It will go beyond the question of priority to that of invention.

How far is it true that the public interest is so affected that this court for the public interest should undertake an independent investigation of the question of priority? How far is it consistent with the rights of a complainant under section 4915 that the court should proceed to try the merits of the question of priority upon former testimony taken in interference? Can a defendant say: "Well, irrespective of my own right to prove my case by secondary evidence, the court cannot, unless it disregards the public interest, decide this case without itself calling for that testimony which it has denied the defendant the right to produce." If the court of its own motion can decide upon this testimony, then the court itself must violate the rule against secondary evidence, in disregard of the complainants' present right of cross-examination. I am of the opinion that upon this question of priority the public interest does not compel the court to receive the secondary evidence offered by the defendant.

The case then stands for decision upon bill, answer, and the proofs taken and admitted in the present cause. The oath is not waived, and the answer denies that Dover was "the true, original, and first inventor," and asserts that Greenwood was. Has the evidence of the complainant overcome this? Dover's application is dated September 11, 1901. The defendant has produced evidence to show that prior to January 1, 1900, a certain exhibit was in the possession of Greenwood. Excluding the interference record, however, there is no evidence as to the origin of that exhibit, or that it was made by Greenwood. If we assume that this exhibit is proved to have been in the possession of Greenwood as early as January 1, 1900, and that this fact accompanied by Greenwood's sworn answer that he was the first inventor of the combination in issue is sufficient to show that Greenwood had

made this exhibit prior to Dover's application date, this is still insufficient to show Greenwood's prior invention of the combination in issue. This exhibit discloses a "pin-tongue" of a construction similar to that of Dover, but this is but one element of the combination.

The claim now in issue is as follows:

"In a device of the character described, the combination of a pin having a hook-shaped portion at one end inclosing a substantially cylindrical bore; a pivot secured at its middle part in said bore of the pin by pressure; a plate; and a cup mounted on the plate and arranged to loosely engage the ends of the pivot."

Of this exhibit the Court of Appeals said:

"We cannot accept this exhibit in its present condition, as an actual reduction to practice of the invention of the issue."

The examiner of interferences was of the opinion that this exhibit was a reduction to practice. The examiners in chief, however, said:

"Although the pin-tongue has a hook-shaped portion at one end inclosing a substantially cylindrical bore, said cylindrical bore is larger than the pin which constitutes the pivot. It cannot, therefore, be said that the pivot pin is secured in said bore by pressure."

They also considered the contention now made in the case, that the manipulation of the parts of the exhibit has resulted in a loosening of the joint between the pivot pin and the hooked end of the pin-tongue, saying,

"We have duly considered this suggestion, but without being able to find therein any reason for holding that the exhibit ever contained the precise invention which is here in controversy."

The commissioner was also of the following opinion:

"Whether or not it was Greenwood's intention to make a pin having the specific pivot and tongue construction of the issue at the time he made 'Exhibit No. 1' cannot be determined with any certainty from the testimony offered in his behalf or from the device itself, and it must be held, therefore, that Exhibit No. 1 cannot avail Greenwood as a reduction to practice."

The invention is thus described upon defendant's brief:

"A certain peculiar combination of pin-tongue and joint, a chief feature of novelty consisting in the particular way in which the pin-tongue and joint are combined."

An examination of the exhibit leads to the same conclusion that was reached by the examiners in chief, the commissioners and the Court of Appeals in respect thereto.

Upon the defendants' brief it is said:

"The characteristic feature of the structure referred to, and which distinguishes it from the prior art, resides in the construction whereby the pivot is secured in the bore of the pin-tongue and is loose in the ears of the cup."

The difficulty with Exhibit 1 is that it is lacking in just this characteristic feature. There is nothing to indicate that the maker of Exhibit 1 did not intend that his pin-tongue should turn on a fixed pivot, as in the prior art. The defendant has introduced a considerable amount of evidence to show that the pin which held together the pin-tongue and the cup was formerly quite tight. This testimony is,

however, too unconvincing to establish for this exhibit any greater weight than was given it by the Court of Appeals, the examiners in chief, and the commissioner. The consideration of the exhibit by the examiners in chief and by the commissioner was most careful, and their conclusions thereon were not reversed by the Court of Appeals.

The long pin used as a pivot was a mere temporary expedient—not so fashioned or proportioned as to show that it was designed to be gripped by the bore of the pin or to turn in the ears of the cup. The difference between a firm grip and a loose grip might depend entirely upon the force used by the hand of the person adjusting it.

The defendant has produced entirely credible testimony to the effect that at a certain time during the taking of testimony in interference the pin was so firmly driven in as to require considerable force to remove it. But the evidence as to a special adjustment of a removable pin of varying diameters and with a corrugated or threaded part at a time after interference proceedings had been begun is of very slight weight, and is far from sufficient to show that Greenwood had ever constructed a device in which the parts were so proportioned as to exhibit the characteristic feature of the claim. This matter was carefully considered by the examiners in chief, and their opinion seems entirely sound.

It is to be understood, of course, that in making use of the opinions of the examiners in chief and of the commissioner we refer to them not as evidence in this case, but merely for the purpose of showing the views of expert officials as to the sufficiency of this exhibit to prove the making of the invention of the claims.

Recognizing the necessity of supplementing this exhibit by proof of its actual condition in the hands of Greenwood, the defendant has offered the testimony of Greenwood's wife and daughter as to the precise adjustment of this pin. The declaration of interference was made April 12, 1902. The testimony of these witnesses was given in May, 1909, and refers to the condition of the exhibit prior to January 1, 1900. These witnesses were asked to take the exhibit and locate the pivot in the position it was in when they first saw it. Mrs. Greenwood's adjustment of the pin is thus described:

"The pivot pin is so located that the pin-tongue comes about half way between the corrugated or threaded part and the pointed end, and with the pointed end of the pivot pin inside the edge of the brass plate."

A similar adjustment was made by Miss Greenwood. It is impossible to attach any weight to this testimony. That these witnesses more than nine years before giving their testimony observed a matter whose importance seems to have escaped the attention of all parties to the interference is too improbable for belief.

In the opinion of the Court of Appeals is quoted the language of the examiners in chief:

"The interferants and their attorneys appear to have disregarded this limitation of the issue, since none of the witnesses in the case were called upon to testify, and did not testify, concerning any disclosure to them by either interferant of a pin device having as an essential feature thereof a pin-tongue rigidly secured by pressure to its pivot."

This seems to be also the opinion of the Court of Appeals.

Assuming the good faith of these witnesses, they have clearly mistaken the period at which the exact position of the pin became a matter so important as to attract attention. Their present very precise recollection of what they observed in 1900 is obviously but a mere reflection of ideas acquired by them at a much later date. Furthermore, even if their testimony as to the adjustment of the pin be accepted at its face value, we agree with the opinion of the examiners in chief that this exhibit would still fail to disclose the construction called for by the claim.

Upon the testimony in the present case there is no proof that Greenwood had ever reduced to practise, or had ever conceived the combination of the claim, until after the filing of Dover's application. The same conclusion was reached by both the examiners in chief and the commissioner upon the interference record.

There remains to consider what effect this court should give to the opinion of the Court of Appeals for the District of Columbia. Considering the interference record the court says:

"The testimony throughout lays stress upon the new pin-tongue as the thing invented. Evidently it was that which each party thought he had invented. But it must be remembered therewith that the novel pin-tongue of the issue, with its hook-shaped portion at one end inclosing and firmly gripping with its spring pressure the cylindrical pivot so that the latter can only turn with the movement of the pin, is the central, essential feature of the invention. The arrangement of the familiar cup attachment to the plate, and the loose engagement of the ends of the pivot therein, are necessary and obvious incidents of the construction and operation of the new pin."

According to my understanding of this opinion, the finding that Greenwood had a prior conception of the invention of the claim is based upon a finding that he had conceived and disclosed the pin-tongue before the earliest date found for Dover, and that the conception of the pin-tongue was substantially a conception of the combination of the claims. In view of the concession "that the evidence of neither party goes sufficiently into details to show the specific disclosure of a complete conception of the particular combination that constitutes the invention of the issue," I am able to find no other ground for the decision in Greenwood's favor than the opinion that the real invention was the pin-tongue, and that this embraced the invention of the combination now in issue, so that no specific disclosure of that combination was necessary. But, in view of the very careful and painstaking opinions of the examiners in chief and of the commissioner, there is great difficulty in accepting the view that the conception of the pin-tongue alone was equivalent to the conception of the combination in issue. The statement in the opinion that "the arrangement of the familiar cup attachment to the plate and the loose engagement of the ends of the pivot therein, are necessary and obvious incidents of the construction and operation of the new pin," is true only upon the assumption that there was a pre-existing combination of pin-tongue and pivot, whereby the pivot was so held that it must turn with the pin. Evidence of the construction or conception of the pin-tongue alone would not warrant that assumption, for the pin-tongue is quite as well adapted to co-operate with a pivot upon which it turns as with a pivot that

turns with it. Evidence of the prior conception or construction of the pin-tongue alone is insufficient to anticipate Dover. Evidence that Greenwood before Dover's date had so combined a pin-tongue and a pivot that the pin could not turn on the pivot, and that the pivot must turn with the pin, might perhaps, be regarded as a practical completion of the combination, for the reason that a loose engagement of the ends of the pivot would then be a mechanical necessity and a necessary incident. We may accept the view of the Court of Appeals that these two parts so combined would constitute "the central essential feature of the invention," but it does not follow from the construction of the pin-tongue itself that the pivot is intended to be combined with the pin in this novel and peculiar manner. From the Greenwood exhibit in its present condition it is quite apparent that a pin-tongue of this peculiar shape, a pivot, and a cup may be so combined as to constitute an operative pin with some advantages of cheapness in manufacture, and yet not contain the very limited and very specific combination of the claim in issue.

Whether the pin-tongue of the exhibit was new with Greenwood and disclosed by him to Dover, or whether Dover found it in the art prior to Greenwood, or constructed it himself, does not seem material. The pin-tongue itself does not disclose the combination of the claim, and this combination is not a necessary and obvious incident of the construction of the pin-tongue.

Assuming that the excluded testimony taken on behalf of Greenwood in the interference has the limited scope given to it in the opinions of the Court of Appeals, the commissioner, and the examiners in chief, and is restricted to proof of the making of the Greenwood exhibit and to disclosures of the pin-tongue alone to Dover and others, it would, if admitted, be insufficient in my opinion to show that at any time prior to Dover's application date Greenwood had invented the very narrow and limited combination of the claim in issue.

With due respect to the opinion of the Court of Appeals, I am of the opinion that it states no satisfactory reason for a reversal of the conclusion of the commissioner and of the examiners in chief.

A decree for the complainant may be presented accordingly.