## UNITED STATES *v.* LIPPMANN, SPIER & HAHN (No. 2155).[1]

1. SECTION 2921, REVISED STATUTES—ALLOWANCE FOR SHORTAGE.

    Revised Statutes section 2921 provides without ambiguity that the collector must make allowance for shortage found and reported by the appraiser in the manner therein provided. It does not clothe the collector with power to require, or cast a burden upon the importer to furnish, any other evidence. While it is true that duties accrue upon imported merchandise at the exact moment it crosses the line within the customs district, it is a physical impossibility to ascertain its exact quantity at that time, and this section should be regarded as establishing a rule to ascertain it.

2. TREASURY REGULATION MUST HARMONIZE WITH STATUTE.

    Compliance with a Treasury regulation will not justify the disregarding of the mandatory provision of a statute.

3. EVIDENCE, PRESUMPTION THAT CUSTOMS OFFICERS DISCHARGE THEIR DUTY—ALLOWANCE FOR SHORTAGE.

    Where the discharging inspector reported that a case was discharged in *apparent* good order, and the appraiser reported a shortage and that the case was received on the examination floor in bad order in that the board on its bottom was broken and

---
[1] T. D. 39145.

the cartons torn, no violence is done to the legal presumption that the customs offi-
cers discharged their duty by the theory that the missing goods were abstracted be-
fore the case crossed the customs line. In such case the collector should have made
allowance for shortage as directed by Revised Statutes section 2921.

## United States Court of Customs Appeals, May 26, 1922.

APPEAL from Board of United States General Appraisers, G. A. 8479 (T. D. 38911).

[Affirmed.]

*William W. Hoppin*, Assistant Attorney General (*Samuel Isenschmid* and *Samuel M. Richardson*, special attorneys, of counsel), for the United States.

*Comstock & Washburn* (*George J. Puckhafer* of counsel) for appellees.

[Oral argument April 25, 1922, by Mr. Isenschmid and Mr. Puckhafer.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge,
participating in the decision by agreement of counsel.

BARBER, Judge, delivered the opinion of the court:

The undisputed facts in this case are substantially as follows:

Nine cases of merchandise arrived at New York by vessel March 6,
1920. Two days later a consumption entry therefor was filed and a
consumption entry permit issued.

One of the nine cases, numbered 15488, was sent to the appraisers'
stores for examination and appraisal, and it was found by the ap-
praiser that the contents were short 4¾ plus 8¾ dozen of metal boleros
set with imitation precious stones.

The only question before us is, whether, under the facts hereinafter
set forth, it was lawful for the collector to take duty on such shortage
upon the theory that the missing articles were imported but lost
after arrival.

The legality of such assessment was seasonably challenged by a
protest, which was sustained by the board.

In his report to the general appraisers accompanying the papers in
the case the collector stated, under date of March 29, 1921:

The discharging inspectors report that case 1548 (sic) was landed and disposed of
by them while in good order. The appraiser states the package was received in bad
order and that a portion of the invoiced contents was missing.

In view of the changed condition of the outer package and the absence of any
report of shortage by the discharging inspectors, it was assumed that the missing
articles were lost after arrival.

Duty was assessed accordingly on the invoiced and entered contents. Note T. D.
38393.

At the hearing before the board the appraiser's answer to the
protest, dated December 7, 1920, was offered by the importers and
received in evidence. The material part thereof is as follows:

Case 15488 was received on the examination floor in bad order, but was not marked
bad order. The board at the bottom of the case was found broken, the cartons torn,
and the shortages noted on the invoice were discovered. In the opinion of this office
the above shortages were due to robbery.

83144—23—VOL 11——22

Upon the report made by the appraiser, probably under date of March 31, 1920, and attached to the invoice, appears the entry:

Case not marked bad order was found to have bottom board broken and evidently robbed.

On the invoice, and referring to case 15488, the shortages are noted and the following memorandum made:

Case not marked bad order and not tin lined. Board on bottom cracked and on investigation found paper cartons torn. Evidence of robbery.

On the back side of the consumption entry permit, apparently under date of June 14, 1920, is the inspector's return stating that—

The articles described herein have been landed, delivered, or disposed of as directed and in apparent good order except as noted below.

There was no notation below.

A paper is fastened to the face of the consumption entry permit on which appears an undated memorandum as follows:

The within nine (9) cases del'd from whf. in apparent good order. Records of S/S Co. agree with above & so signed for—

followed by the inspector's signature. Following this, under date of February 24, 1921, is indorsed—

Respectfully forwarded to the collector as a reply to protest No. 12676—

signed by an acting deputy surveyor. 12676 is the number of the protest in this case.

It may be noted that the collector states that the inspector reported that the case in question was landed and disposed of while in *good* order. The inspector himself states that it was in *apparent* good order. The appraiser states that it was not marked *bad* order. The entry on the invoice refers to the case as having bottom board *cracked*, while the report of examination and the answer to the protest states the board was *broken*.

The Government contends that the discharging inspector's statement or certificate, whichever it may be termed, establishes that the goods reported short were actually brought into the customs district, and therefore dutiable, notwithstanding the certificate of shortage made by the appraiser to the collector.

In this connection reference may be made to T. D. 38393, mentioned in the collector's return. It is a Treasury regulation dated May 3, 1920, amending article 608 of the Customs Regulations of 1915. This regulation in substance provided that allowance should be made in liquidation of duties for deficiencies in packages found by the appraiser and so certified to the collector, if the collector was satisfied that the missing articles were not included in the importation. The material part of the amendment is:

If it appears from the official records that the deficiency is due to robbery after importation, no allowance shall be made—

and the Government claims the record here establishes such robbery.

Section 2921 of Revised Statutes provides that—

If, on the opening of any package, a deficiency of any article shall be found, on examination by the appraisers, the same shall be certified to the collector on the invoice, and an allowance for the same be made in estimating the duties.

We regard the real question here to be whether or not this statute requires the collector to make an allowance for the shortages found by the appraiser in this case. We think it does, and that the collector had no authority to take duty upon the missing articles.

It will be noted that at no time, after the discharging inspector took charge of the merchandise on the importing vessel, was case 15488 in the custody or under the control of the importers until after the shortage had been discovered, but was constantly in customs custody.

The Government urges that it must be presumed from the report of the discharging inspector, in view of the fact that the invoice includes the merchandise found short, that it was in the case when the importation entered the customs district, hence it must have been taken therefrom thereafterwards, which taking, in view of the facts and T. D. 38393, justified the assessment of duty thereon.

The importers, however, point out, and such seems to be the fact, that no duty by statute or otherwise is cast upon the inspector to make such a detailed examination of merchandise as it is discharged from a vessel as would necessarily or probably lead to the discovery of the cracked or broken board of the case in question, or suggest that goods had been taken therefrom. Articles 96, 129, 1084, 1085, and others not necessary to specifically mention of the Customs Regulations of 1915 may be referred to in this connection.

If, when unlading, a case were in very bad condition, it would doubtless attract the inspector's attention, otherwise it would naturally be reported as "in apparent good order." We are not persuaded that the condition of case 15488, assuming it to be as found by the appraiser, was such as to require us to presume that the inspector would observe or report it. It seems reasonable that he might well have discharged his duty by reporting it as in *apparent* good order.

It is evident that in the unlading of merchandise from a vessel a careful and particular examination of each case would be impracticable.

In other words, we attach no controlling importance to the report of the discharging inspector, so far as it relates to the package in question.

Counsel on both sides agree that it is to be presumed that the customs officials have performed their duty in all respects, and we concur therewith. Applying such presumption to this case, it is

clear that the facts do not require any conclusion that the goods found short were abstracted from the case after importation. All legal presumptions are satisfied, and no crime or negligence imputed to any customs officer by holding, as did in effect the Board of General Appraisers, that presumably the shortage existed prior to importation.

It was said in substance in United States v. Shallus (2 Ct. Cust. Appls. 332; T. D. 32074) that while it was true that under the law duties accrued upon imported merchandise at the exact moment it crossed the line within the customs district, it was a physical impossibility to ascertain the actual quantity thereof then, and that section 2921 of Revised Statutes should be regarded as establishing a rule to ascertain their existence at that time.

We think this section provides without ambiguity that an allowance for shortage found and reported by the appraiser in the manner therein provided shall be made in estimating the duties. The section does not clothe the collector with power to require or cast a burden upon the importer to furnish any other evidence. In the case at bar the duty of the collector is prescribed by the statute. He must make an allowance.

No statute is cited and no adjudicated case referred to that establishes a different rule applicable to a case like the one now before us, and the Treasury regulation relied upon by the collector can not authorize him to disregard the mandatory provision of section 2921. See Madeira Embroidery Co. v. United States (9 Ct. Cust. Appls. 140; T. D. 37990); United States v. Park (77 Fed. 608); Balfour v. Sullivan (17 Fed. 231); T. D. 24334 (G. A. 5317); T. D. 24361; T. D. 24511 (G. A. 5359).

The expressed *opinion* of the appraiser that the case was robbed is not important. If it were, it might just as well relate to robbery before the package crossed the customs line as afterwards.

Manifestly this opinion is confined to the facts in this case, and thereon we think both upon reason and authority the judgment of the Board of General Appraisers must be and it is hereby *affirmed.*