McKESSON & ROBBINS (INC.) *v.* UNITED STATES (No. 2220).[1]

1. APPRAISEMENT, TIME AND PLACE OF.

In contemplation of the law, it is the appraiser's duty to exercise his authority at the time when and the place where the merchandise enters the customs district, and his report as to the quantity of the merchandise relates to the time when and the place where the importations became dutiable.

[1] T. D. 39572.

2. SHORTAGE.

R. S. 2921 is unambiguous and mandatory in its requirement that the collector shall make allowance, in the absence of fraud, for any deficiency reported to him by the appraiser when the merchandise has at all times been in the uninterrupted possession of the Government.

3. SHORTAGE.

Upon report to the collector by the appraiser of a shortage in an importation of unpermitted opium, at the public stores, allowance should have been made, notwithstanding that the discharging inspectors' report and the dock book showed that the shortage did not exist at the time the goods were landed.

## United States Court of Customs Appeals, March 30, 1923.

APPEAL from Board of United States General Appraisers, G. A. 8568 (T. D. 39267).

[Reversed.]

*James W. Bevans* for appellant.

*William W. Hoppin,* Assistant Attorney General (*Samuel M. Richardson,* special attorney, of counsel), for the United States.

[Oral argument March 21, 1923, by Mr. Bevans and Mr. Richardson.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

HATFIELD, Judge, delivered the opinion of the court:

An importation, invoiced as 50 cases of opium, arrived May 9, 1920. May 15, 1920, it was transferred to public store as unpermitted opium.

The appraiser's report to the collector shows case No. 40 "Empty, in bad order, not corded and sealed, evidence of robbery, gross weight twenty-nine pounds."

The report of the discharging inspector, under date of August 17, 1921, is as follows:

\* \* \* As discharging inspectors of the S/S Blair, from Constantinople, arrival of May 9, 1920, we have to report regarding reference #1559 covering one case marked W T 40 One Case Opium, unpermitted. The same was landed from the above vessel and delivered in good order May 15, 1920, to Keahon's truck #9483 for transfer to Public Store as unpermitted opium. The weigher's returns show Gr. weight of 200 lbs. No notation of bad order on returned P S' ticket. Case not corded or sealed.

Respectfully,          VAN TWISK & ERSKINE, *Insprs.*

The collector's report, under date of October 22, 1921, is as follows:

\* \* \* The discharging inspectors report that the case in dispute, No. 40, was landed and delivered in good order. An examination of the dock book shows that a gross weight of 200 lbs. was returned for the case. The appraiser states that the case was found empty, "in bad order, not corded and sealed, evidence of robbery, gross weight 29 lbs." In view of the inspector's report of good landing and the weigher's return of gross weight, duty was assessed on the net weight of the invoiced contents based upon the appraiser's return of net weight of the remaining 49 cases. \* \* \*

The collector estimated the net weight of the invoiced contents of case No. 40 as 168.03 pounds of opium and proceeded to assess the same for duty at $3 per pound.

As is indicated by his report, the collector ignored the report of the appraiser as to case No. 40 and assessed duty upon the report of the discharging inspectors.

The record discloses that the merchandise was in the uninterrupted custody of the Government from the time it was discharged from the importing vessel until opened by the appraiser.

Paragraph K, Section III, tariff act of 1913, provides that—

It shall be the duty of the appraisers of the United States, and every of them, and every person who shall act as such appraiser, or of the collector, as the case may be, by all reasonable ways and means in his or their power, to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost, or of cost of production to the contrary notwithstanding) the actual market value and wholesale price of the merchandise at the time of exportation to the United States, in the principal markets of the country whence the same has been imported, and the number of yards, parcels, or quantities, and actual market value or wholesale price of every of them, as the case may require.

Section 2921 of the Revised Statutes is as follows:

If, on the opening of any package a deficiency of any article shall be found, on examination by the appraisers, the same shall be certified to the collector on the invoice, and an allowance for the same be made in estimating the duties.

This section has been construed by this court in several cases; the facts in those cases, however, being slightly different from those in the case at bar.

We think that the facts in this case, if the return of the appraiser is the subject of disputation, would warrant the conclusion that the contents of case No. 40 had been removed after the case was landed from the importing vessel.

In the case of United States *v.* Lippman et al. (11 Ct. Cust. Appls. 336; T. D. 39145), it was said in substance that section 2921 of the Revised Statutes provides, without ambiguity, that the collector must make allowance for shortage found and reported by the appraiser in the manner therein provided. It does not clothe the collector with power to require, or cast a burden upon the importer to furnish, any other evidence.

It was also said in substance in that case that compliance with a Treasury regulation will not justify the disregarding of the mandatory provisions of section 2921 of the Revised Statutes.

It was also said in substance in the case of the Madeira Embroidery Co. *v.* United States (9 Ct. Cust. Appls. 140; T. D. 37990), that section 2921 contemplates that where an examination is made by an appraiser and a deficiency in the articles found, he shall report that fact to the collector, who shall make an allowance. The statute is not ambiguous in any of its terms.

In the above cases the facts were slightly different from those in the case at bar, but the principles announced in those cases are of importance and applicable here.

It is well settled that duty attaches upon merchandise at the time it enters the customs district. However, the involved details of handling and the attending difficulties in the ascertainment of the dutiable status of merchandise, required that legislative authority and responsibility for determination of dutiable status be given to some recognized agent of the Government.

So far as the question involved in this case is concerned, the statutory authority and responsibility for determination of quantity, devolves upon the appraiser by the provisions of section 2921, Revised Statutes.

In contemplation of the law it is the appraiser's duty to exercise his authority at the time when, and the place where, the merchandise enters the customs district, and the report of the appraiser as to the quantity of the merchandise relates to the time when and the place where the importations became dutiable.

The report of the appraiser as to quantity to the collector and the duties of the collector in that instance are provided for in section 2921 of the Revised Statutes.

A fair consideration of section 2921 of the Revised Statutes shows that the Congress, in directing the method of proceeding of the appraiser and the collector, intended compliance with the provisions thereof to be essential to the validity of the proceedings.

The section is unambiguous and mandatory and the collector is required by said section to make an allowance for any deficiency reported to him by the appraiser thereunder, in the absence of fraud, when the merchandise has at all times been in the uninterrupted possession of the Government.

The decision of the Board of General Appraisers is *reversed.*