ABELL FORWARDING Co. *v.* UNITED STATES (No. 2644) [1]

EVIDENCE, NO PRESUMPTION FAVORS EXTRA-OFFICIAL ACTS—CASUALTY, PROOF OF LOSS.

Section 563, Tariff Act of 1922, directs the Board of United States General Appraisers to abate or refund duties on goods suffering casualty in bonded warehouse. Article 720, Customs Regulations 1923, directs the appraiser to report on such loss. There is no authority of law for such report by the appraiser, and no presumption of correctness attaches to it. The allowance ordered by the board should have been based upon the loss shown by the evidence.

United States Court of Customs Appeals, March 13, 1926

APPEAL from Board of United States General Appraisers, Abstract 49434

[Reversed.]

*Barnes, McKenna & Halstead* (*Albert MacC. Barnes* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Ralph Folks,* special attorney, of counsel), for the United States.

[Oral argument December 15, 1925, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellant imported and entered, for warehouse, at the port of Buffalo, a considerable quantity of oats and wheat, which was stored, in Government custody, in the Exchange Elevator, a wooden structure, at the Erie Basin. On September 8, 1924, there remained in said elevator, of this grain, 22,425 bushels of oats and 8,000 bushels of wheat. On that day fire broke out in the elevator, which continued, intermittently, for 10 days, while the fire department of Buffalo was continually attempting to subdue it. The building, 154 feet in height, finally collapsed, and with whatever contents it may have contained, remained a heap of ruins up until the time of final hearing before the court below, March 10, 1925.

On September 15, 1924, the importer filed with the collector at the port of Buffalo, two claims for abatement or allowance of duties under section 563 of the Tariff Act of 1922, claim No. 757 being for an abatement of the duties upon 8,000 bushels of wheat, and claim No. 758 being for an abatement of the duties upon 22,425 bushels of oats. The collector, in each case, referred these claims to the appraiser, with an order to ascertain and report the damage, if any. On September 24, following, the appraiser reported as follows:

Claim No. 757.

In pursuance of your order, I have examined the following-described merchandise and do certify that the same has sustained damage by fire and water to the extent of 75% of its orig. value, as follows, to wit: Wheat—damaged 75%.

Claim No. 758.

[1] T. D. 41455.

In pursuance of your order, I have examined the following-described merchandise and do certify that the same has sustained damage by fire and water to the extent of 75% of its orig. value, as follows, to wit: Oats—damaged 75%.

The Board of General Appraisers heard the matter on the evidence submitted by the parties and entered an order directing the collector to abate the duties, in each case, to the amount of 75 per centum thereof. From that judgment the importer appeals, contending here that the court below erred in refusing to enter an order abating all the duties assessed against the grain remaining in said elevator at the time of the fire.

Section 563 of the Tariff Act of 1922 is as follows:

SEC. 563. ALLOWANCE FOR LOSS—ABANDONMENT.—In no case shall there be any abatement or allowance made in the duties for any injury, deterioration, loss, or damage sustained by any merchandise while remaining in a bonded warehouse: *Provided,* That upon the production of satisfactory proof to the Board of General Appraisers of actual injury or destruction, in whole or in part, of any merchandise, by accidental fire or other casualty, while in bonded warehouse, or in the appraiser's stores undergoing appraisal, or while in transportation under bond from one port to another, or while in the custody of the officers of the customs, although not in bond, or while within the limits of any port of entry, and before the same has been landed from the importing vessel or vehicle, such board is hereby authorized to order an abatement or refund, as the case may be, and the Secretary of the Treasury is authorized to pay, out of any moneys in the Treasury not otherwise appropriated, the amount of duties paid. Notice in writing shall be filed with the collector of the district in which such actual injury or destruction was sustained or occurred, and the collector shall transmit such notice together with all papers and documents to the board for due assignment and determination, and such determination shall be final and conclusive upon all persons interested therein except in cases where an appeal may be filed by either party in the United States Court of Customs Appeals within the time and in the manner provided by law. * * *

Following the approval of the Tariff Act of 1922, the Treasury Department, under the general authority of section 623 thereof, promulgated the following regulations, which were, during the pendency of these proceedings, in full force and effect.

ART. 720. APPLICATION.—No abatement or refund of such duties will be made unless the importer shall file an application (Customs Form 4315) with the collector at the port where the damage or destruction occurred or where the merchandise first arrived thereafter, which application will be forwarded to the appraiser for appraisement of the merchandise.

The sole question involved here is the amount of damage established by the evidence. The Government maintains that the reports of the appraiser in these claims must be presumed to be *prima facie* correct and that such presumption has not been overcome by any evidence produced by the importer. In this view the court below concurs and, in fact, bases its conclusion thereon.

For the first time in the history of our tariff laws, section 563 of the Tariff Act of 1922 made the abatement or allowance of duties for goods destroyed while in customs custody a judicial function. Prior to that, it had been exclusively an administrative one.    Section 2984, Revised Statutes, provided that the Secretary of the Treasury might make such allowances, "on production of satisfactory proof to him of the actual injury."    His orders in that respect were final and conclusive.    To carry into effect the provisions of said section 2984, article 595 of the Customs Regulations of 1915 was promulgated and was identical with article 720 of the Customs Regulations of 1923, above quoted.    In other words, while the Secretary of the Treasury had the onus of passing upon claims for abatement and allowance, he provided, by proper regulations, that the appraiser should report to him, through the collector, as to the amount of damage.    By this machinery, all parts of the investigation were conducted by the Secretary of the Treasury or by administrative officers acting directly under and through him.

But when the Congress took this function away from the Secretary of the Treasury and invested a court, the Board of General Appraisers, with the power of determination of abatements and allowances, the old regulation, article 595, was continued and reenacted as article 720, without any reason for its further continuance.    Section 563 provides that the Board of General Appraisers shall, "upon production of satisfactory proof," make such order as may be warranted, under the circumstances.    In this hearing, the Board of General Appraisers is not at all limited or bound by what some administrative officer may think about the matter which the board, alone, must, under the law, determine.

It will be observed, also, that section 563 does not require or direct the collector to transmit the petition to the appraiser for report.    The collector has but one duty, namely, to transmit the petition, with the papers, to the Board of General Appraisers.    In so doing, he performs merely a ministerial function, and has nothing whatever to do with the fixing of the amount to be abated or allowed.    Nor is the appraiser given any express authority of law to perform any such function as he has here attempted to perform.    Secs. 499, 500, 503, 508, Tariff Act of 1922.

The case is not at all similar to cases where reports are made by various administrative officers, such as an appraiser, gauger, weighmaster or sampler, to the collector, in the classification of and collection of duty upon, imported merchandise.    There, it is the statutory duty of the collector to make a finding of the amount of duty due and the reports of such other administrative officers to him, in so doing, are usually given full weight by the courts and are taken as

presumptively correct when made under statutory authority. But in the case at bar, no such condition exists. To hold that the Board of General Appraisers was to any degree bound here by the report of the appraiser would be to deny to the board a very essential part of the power with which the Congress has invested it. Extra-official acts of customs officers have never been considered by the court to be entitled to the legal presumption of correctness. *United States* v. *Lippmann et al.*, 11 Ct. Cust. Appls. 336; *Brown & Co.* v. *United States*, 12 Ct. Cust. Appls. 26; *United States* v. *Stegemann*, 12 Ct. Cust. Appls. 198; *Balfour, Guthrie & Co.* v. *United States*, 12 Ct. Cust. Appls. 376.

We are therefore of the opinion that the reports of the appraiser in the case at bar are not entitled to any presumption of *prima facie* correctness. If such reports are to be considered as evidence, they should be offered as such. Whether, if so offered, they would be subject to objection, we are not here called to pass upon. It is sufficient to note that they were not offered or received as evidence, and, hence, the consideration of them, as such, was and is error.

We come now to a consideration of the evidence. Eliminating the reports of the appraiser, the evidence plainly shows a total loss of the grain in question. The witnesses, persons of apparent responsibility, who examined the ruins, stated there was a confused heap of embers, timbers, and débris, with no grain to be seen, except some scattered grains. Several witnesses went to examine the ruins with a view of salvaging the grain, and testified that in their opinion there was a total loss of the grain. A director of the Exchange Elevator (Lim.), Howard J. Smith, examined the ruins after the fire and stated "there was very little grain left." The superintendent of the elevator stated that he examined the ruins carefully "and you could not see anything." Charles C. Greene, an insurance adjuster, examined the ruins in the interests of his company, an insurer, and testified that in his opinion there was nothing of any value in them; he further stated that he had at one time received an offer of $1,000 for what remained, but that this offer was later withdrawn. No attempt had been made, up to the time of the trial below, to salvage any part of the grain in the destroyed elevator. No evidence was offered on the part of the Government to rebut the showing thus made by the importer.

In our opinion the importer is entitled, upon the record made here, to an abatement of the full amount of duties on 8,000 bushels of wheat and 22,425 bushels of oats. The order of the Board of General Appraisers is therefore reversed and the cause remanded with directions to enter an order granting an abatement accordingly.

*Reversed* and *remanded.*