316

**A. HOFMANN, Inc., v. UNITED STATES.**

Customs Appeal No. 3668.

Court of Customs and Patent Appeals.

Feb. 5, 1934.

George S. Brengle, of New York City (John M. Aherne, of New York City, of counsel), for appellant.

Charles D. Lawrence, Asst. Atty. Gen. (William H. Futrell, Sp. Atty., of New York City, of counsel), for the United States.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The steamship Muenchen, with cargo from the port of Bremen, Germany, arrived at the port of New York on February 11, 1930, and went to Pier 42, North River. On the morning of that day a fire started in her cargo. Fire companies were called and pumped water into her hold. At some time during the fire an explosion occurred, and a hole was formed in her hull. She finally sank, at the pier, and was in such condition that water entered the vessel, which water rose and fell therein with the tide. Among other goods in the cargo were two cases containing knocked-down hosiery knitting machines, which are the goods involved here. How long the goods in question remained submerged is not shown. However, on February 19, the importer entered a claim, under the provisions of section 563 of the Tariff Act of 1922 (19 USCA § 464), for an ascertainment of damage claimed to be due because of the aforesaid casualty.

Thereupon, the collector of the port requested the local appraiser to ascertain and estimate such damage. On March 25, 1930, the assistant appraiser made the following report:

"United States Customs Service,

"District No. ——, Port of New York, N. Y.,

"Appraiser's Office, March 25, 1930.

"To the Collector of Customs:

"In pursuance of your order, I have examined the following-described merchandise, and do certify that the same has sustained damage by contact with water, as follows, to wit:

| Marks | Numbers | Description of merchandise | Rate of damage |
|---|---|---|---|
| Sch. & S. | 119300½ | Two (2) c/s machinery | Seventy (70) percent. |

"J. C. H.
"M. Hart, Asst. Appraiser.
"Approved Mar. 27, 1930.
"F. J. H. Kracke, Appraiser.

Thereafter, in pursuance of provisions of said section 563, the assistant collector transmitted the same to the United States Customs Court, with the following letter:

"Sirs: I transmit herewith for your consideration under section 563 of the Tariff Act of 1922 the application of A. Hofmann, Inc., for relief from the payment of duties or a refund of duties already paid in connection with a shipment imported by them ex s/s Muenchen and covered by WHB 31175, the merchandise in question having been damaged as the result of fire which occurred on the import vessel while within the limits of the port of New York.

"Endorsed upon the application will be found report of the U. S. appraiser as to the extent of damage sustained.

"Attached to the application will be found report by the U. S. Customs Inspector concerned certifying to the fact that the merchandise covered by the application was in customs custody at the time of the casualty.

"Respectfully,
"H. C. Stuart, Assistant Collector."

The matter came on to be heard before the trial court, and counsel for the importer offered in evidence the claim, the letter of the assistant collector, the certificate of the inspector, and the report of the assistant appraiser, all of which were admitted in evidence. Some additional testimony was introduced, showing the facts to be substantially as hereinbefore stated. No testimony was offered by the government, and the cause was submitted. The trial court held that paragraph 400 of section 1 of the said Tariff Act of 1922 (19 USCA § 121, par. 400) prevented an allowance of any amount of damage to any iron or steel material involved in the damaged merchandise, on account of rust or discoloration, basing its conclusion upon a line of decisions, namely, abstracts 4988, 10268, 10269, 11694, 13669, 13821, 13822, and 14653. An examination of these decisions of the United States Customs Court discloses that they were all rendered under the Tariff Act of 1922.

In the case at bar the court held: "We

find nothing in the combined records to show what portion of the damage to the machinery herein was 'in consequence of rust or of discoloration * * * upon any description of iron or steel,' and we therefore are unable to ascertain to what extent abatement of duty might be granted under section 563. * * *"

The cases heretofore referred to by their abstract numbers were each decided upon the same theory.

Thereafter a motion for rehearing was filed, the motion being based upon the statement by counsel for the appellant that it desired leave to present evidence which would bring the matter within the purview of the court's decision and make a basis for an allowance of abatement of duty.

A rehearing was allowed by the court, and witnesses were called to testify as to the condition of the imported goods after unlading. This testimony showed, in a general way, the condition of the various parts, the composition of machinery, showing that it was composed in part of steel and in part of other metals, such as aluminum, brass, and babbitt. Expert testimony was also introduced in an attempt to prove that the waters of the lower Hudson river surrounding said Pier 42 were so impregnated with sewage and so contaminated that there was but little oxygen remaining in the water; in fact, an insufficient amount to produce oxidation or rust. This testimony, however, was insufficient, in our opinion, to establish that fact.

There was also evidence to the effect that there was some rust and discoloration upon part of the iron and steel parts, that many of the metal parts of the machine were pitted, corroded, and, in some cases, destroyed, and that the impurities within said waters were sodium chloride, hydrogen sulphide, and other impurities, which would aid electrolytic and chemical corrosion.

On reconsideration, the court again held that the evidence was insufficient to show what proportion of the damage was due to rust or discoloration upon iron or steel, and, following the former holding of the court, again denied the application for abatement.

Said paragraph 400 of section 1 and section 563 are as follows:

"Par. 400. No allowance or reduction of duties for partial loss or damage in conse-

quence of rust or of discoloration shall be made upon any description of iron or steel, or upon any article wholly or partly manufactured of iron or steel, or upon any manufacture of iron or steel.

"Sec. 563. *Allowance for loss—Abandonment.*—In no case shall there be any abatement or allowance made in the duties for any injury, deterioration, loss, or damage sustained by any merchandise while remaining in a bonded warehouse: Provided, That upon the production of satisfactory proof to the Board of General Appraisers of actual injury or destruction, in whole or in part, of any merchandise, by accidental fire or other casualty, while in bonded warehouse, or in the appraiser's stores undergoing appraisal, or while in transportation under bond from one port to another, or while in the custody of the officers of the customs, although not in bond, or while within the limits of any port of entry, and before the same has been landed from the importing vessel or vehicle, such board is authorized to order an abatement or refund, as the case may be, and the Secretary of the Treasury is authorized to pay, out of any moneys in the Treasury not otherwise appropriated, the amount of duties paid. Notice in writing shall be filed with the collector of the district in which such actual injury or destruction was sustained or occurred, and the collector shall transmit such notice together with all papers and documents to the board for due assignment and determination, and such determination shall be final and conclusive upon all persons interested therein except in cases where an appeal may be filed by either party in the United States Court of Customs Appeals within the time and in the manner provided by law. The consignee may, with the consent of the Secretary of the Treasury, at any time prior to three years from the date of original importation abandon to the Government any merchandise in bonded warehouse and be relieved of the payment of duties thereon: Provided, That the portion so abandoned shall not be less than an entire package and shall be abandoned in the original package without having been repacked while in bonded warehouse."

It is contended here, by counsel for appellant, that the trial court erred in holding that said paragraph 400 of section 1 was a limitation upon the language of said section 563; that the legislative history of the two provisions showed that it never was intended to be so considered; that the proximate cause of the injury to the imported goods was the casualty aforesaid, while the goods were in customs custody; that the importer had

proved by the introduction of the reports of the customs officers, and by other testimony, that its goods had been damaged to the extent of 70 per centum, and that it was entitled to an abatement to that extent.

On the other hand, the government insists that the trial court came to the correct conclusion, and that no allowance can be made for any rust or discoloration upon any imported iron or steel articles, however it may be caused, because of the limiting language of said paragraph 400.

On March 28, 1854, the Congress enacted what is known as section 2984, Revised Statutes, 10 Stat. 273. This section was the same, in substance, as section 563, providing, however, that the Secretary of the Treasury should perform the duties now imposed upon the United States Customs Court. It was thereafter somewhat amended (Act of February 27, 1877, 19 Stat. 247), but remained, in substance, the same, until it was repealed by section 642 of the Tariff Act of 1922, 42 Stat. 858, 989. When it was thus repealed, said section 563 appeared in said act in its stead.

In the Act of March 2, 1799, 1 Stat. 666, what is now known as section 2927, Revised Statutes, was enacted as follows: "And in respect to articles that have been damaged, during the voyage, as aforesaid, whether subject to a duty ad valorem, or which are chargeable with a specific duty, either by number, weight or measure, the appraisers as aforesaid shall in like manner ascertain and certify, to what rate or per centage, the said goods, wares or merchandise are damaged, and the rate or per centage of damage, so ascertained and certified, shall be deducted from the original amount, subject to a duty ad valorem, or from the actual or original number, weight or measure on which specific duties would have been computed. *. * *. "

This section continued in effect until its repeal by section 29 of the Customs Administrative Act of June 10, 1890, 26 Stat. 131, 141.

It will be observed that said section provided for an allowance to be made for damage occasioned during the voyage, and did not refer to damages occurring while the goods were in customs custody.

In the said Act of June 10, 1890, the practice theretofore followed of allowing remittances of duty for damages during the voyage was discontinued, and the following provision (section 23 [26 Stat. 140]) was substituted therefor: "Sec. 23. That no allowance for damage to goods, wares, and

merchandise imported into the United States shall hereafter be made in the estimation and liquidation of duties thereon; but the importer thereof may, within ten days after entry, abandon to the United States all or any portion of goods, wares, and merchandise included in any invoice, and be relieved from the payment of the duties on the portion so abandoned: Provided, That the portion so abandoned shall amount to ten per centum or over of the total value or quantity of the invoice; and the property so abandoned shall be sold by public auction or otherwise disposed of for the account and credit of the United States under such regulations as the Secretary of the Treasury may prescribe."

That provision of law, in substance, continued, and appeared as section 505 of the Tariff Act of 1922 (19 USCA § 387).

Said paragraph 400 of section 1 first appeared as a portion of section 3 of the Tariff Act of July 14, 1862, 12 Stat. 543, 544, in this form: "On all manufactures of steel, or of which steel shall be a component part, not otherwise provided for, five per centum ad valorem: Provided, That no allowance or reduction of duties for partial loss or damage shall be hereafter made in consequence of rust of iron or steel, or upon the manufactures of iron or steel, except on polished Russia sheet iron. * * * "

It has appeared in successive tariff acts, always as a part of the dutiable list including metals. Schedule C, Tariff Act of March 3, 1883, 22 Stat. 488, 500; paragraph 149, § 1, Act of October 1, 1890, 26 Stat. 567, 577; paragraph 125, § 1, Act of August 27, 1894, 28 Stat. 509, 517; paragraph 138, § 1, Tariff Act of July 24, 1897, 30 Stat. 151, 162; paragraph 138, § 1, Tariff Act of August 5, 1909, 36 Stat. 11, 25; paragraph 116, § 1, Tariff Act of October 3, 1913, 38 Stat. 114, 125.

It is argued by counsel for appellant that, in ascertaining the legislative intent with which a law is enacted, conditions at the time of the enactment of the measure should be considered. It was said in United States v. Wong Kim Ark, 169 U. S. 649, 653, 18 S. Ct. 456, 458, 42 L. Ed. 890: "I. In construing any act of legislation, whether a statute enacted by the legislature, or a constitution established by the people as the supreme law of the land, regard is to be had, not only to all parts of the act itself, and of any former act of the same lawmaking power, of which the act in question is an amendment, but also to the condition and to the history of the law as previously existing, and in the light of which the new act must be read and interpreted." To the same effect was United States v. Morrow, 266 U. S. 531, 535, 45 S. Ct. 173, 69 L. Ed. 425.

It is quite manifest, we think, that said paragraph 400 was originally enacted to prevent claims for abatement of duties for rust and discoloration to steel and iron articles, during the course of the voyage. It could not have been enacted for the purpose of mitigating claims for allowance because of casualty, while in customs custody, for there was, at that time, no provision of law for any such claim, so far as counsel have advised or contended. It is a matter of common knowledge that damp salt air will speedily rust and discolor steel and iron articles, and many claims for abatement of duties might have been, and probably were, made on that account.

However, the ancestor provision of said section 563 introduced into our customs system a new principle, that of abatement of duties upon goods destroyed or damaged, while in customs custody by unavoidable casualty. It will be observed that, when this provision first became the law in 1854, the original paragraph 400 and section 2927, Revised Statutes, were in effect, and that all these three provisions were contemporaneously effective for several years. The reasonable conclusion from all this is that said original enactment of what is now paragraph 400 was not intended as a limitation upon said original section 563, but that one was intended to apply to damages during the voyage, and the other to damages while in customs custody.

It is then asked, If this be the proper construction, why was said paragraph 400 continued after said section 2927 was repealed by the Act of June 10, 1890, and why does it still continue as a part of the metal schedule in the Tariff Act of 1922? This inquiry suggests at once the possible application of said paragraph to section 505 of said act, hereinbefore referred to. This section provides for an allowance upon duties when the importer, first, abandons and delivers up 10 per centum or more of his imported goods, and, second, where 5 per centum or more of perishable imported merchandise is "injured so that its commercial value has been destroyed." The injuries comprehended by this section may well be those suffered on the voyage.

At the time of the importations in question here, articles 725 to 731, inclusive, of the Customs Regulations of 1923, were in effect, based upon said section 505. In the administration of these rules, it appears that there would be a call for the operation of said paragraph 400.

We are not fully advised of the administrative practice of the Treasury Department under said section 563 and its predecessor paragraphs, prior to said abstract 4208, 52 Treas. Dec. 653, decided October 18, 1927. However, it appears that the practice may have been to the contrary of that announced in said abstract 4208. On February 9, 1887, the steamer Wells City was sunk in the North River while at anchor, by floating ice. Certain steel articles were on board, and the question was raised whether an allowance could be made for such damage as was caused by rust or discoloration in view of schedule C of the Tariff Act of March 3, 1883, hereinbefore referred to. The matter was submitted to the Solicitor of the Treasury, and his opinion appears in T. D. 8272, Synopsis of Decisions, 1887, Treas. Dept., p. 298. It is as follows:

"Sir: I have considered the question presented by your letter of the 28th ultimo, referring a communication from the collector of customs at New York, relative to an application for damage allowance on a quantity of sheet-iron imported per 'Wells City,' sunk in the North river while the vessel was lying at anchor.

"By the Act of March 3, 1883 (T. I., 184), it is provided that 'no allowance or reduction of duties for partial loss or damage in consequence of rust or of discoloration shall be made upon any description of iron or steel, or upon any partly manufactured article of iron or steel, or upon any manufacture of iron and steel.'

"Section 2927, Revised Statutes, provides for an allowance for damage suffered by merchandise during the voyage of importation, and for the means to be employed at or about the time of entry and liquidation of duties, to ascertain the reduction to be made either in value or quantity.

"Section 2984 of the same statutes authorizes the Secretary of the Treasury, upon receiving satisfactory proof of actual injury or destruction, in whole or in part, of any merchandise by accidental fire or other casualty, while the same remains in the custody of the officers of customs or within the limits of any port of entry and before the same have been landed, &c., to abate or refund, as the case may be, the amount of duties paid or accruing on such merchandise, &c.

"The first provision referred to is in the tariff act in immediate connection with the provision levying duties upon iron and steel and the manufactures thereof.

"It prohibits any allowance or reduction for damage caused by rust or discoloration, in the levying, collection, and payment of duties (section 2502). It is manifest, I think, that this refers to the damage during the voyage of importation, and takes the particular articles, viz, iron, steel, and manufactures thereof, out of the provision of section 2927, Revised Statutes, providing for allowance in case of damage to merchandise generally, occurring during the voyage. The cargo in question had completed the voyage of importation, and was in the custody of the customs officers or within the limits of a port of entry. No damage allowance could be made, therefore, under section 2927, Revised Statutes; and if any allowance can now be made it must be under the authority of section 2984, authorizing the Secretary of the Treasury to abate or refund in certain cases. Does the prohibition in the present tariff act as to iron and steel affect or restrict this authority of the Secretary of the Treasury? I think it does not. There are no words of repeal applicable specially to the previous law giving such authority, and no implication can be reasonably drawn from any apparent repugnance between the two enactments. The previous law authorizing an abatement or refunding of duties relates to an entirely different condition of the merchandise. It presupposes that the goods have arrived in this country in good condition, and have become liable to duties; that the destruction or damage has occurred while in the custody of the customs officers, by some accident or casualty, not by rust or depreciation, incidental either to the shipment or to the custody while on the vessel in port, or on shore, but by something unforeseen and not to be guarded against. In the present case the injury occurred from a casualty, the vessel having been cut down by an ice floe while at anchor in port, and the damage is of a different character from that referred to in the prohibition of the tariff act, which arises merely from the rust incidental to a voyage and to the article shipped.

"It is my opinion that the allowance can be legally made under section 2984, subject to the proof thereby required and the restrictions therein imposed on the Secretary of the Treasury.

"Very respectfully,

"A. McCue, Solicitor."

We find ourselves in harmony with the reasoning of this opinion.

There is, in our opinion, an additional and compelling reason leading to the conclusion that the claim for damage in the case at bar should have been fully allowed. The reports

of the customs officials were duly admitted in evidence, and were properly considered. The following cases would seem to support this holding: Knauth, Nachod & Kuhne v. United States, 13 Cust. App. 324, T. D. 41234; Abell Forwarding Co. v. United States, 13 Cust. App. 597, T. D. 41455; Superfos, Inc., v. United States, 14 Cust. App. 283, T. D. 41887. These reports establish that the imported goods were damaged by the casualty to the extent of 70 per centum of their value. There is no evidence to the contrary. In making this estimate, it must be assumed that the appraiser and collector included therein only such damage as was directly occasioned by the casualty, including any rust or discoloration occasioned thereby. In such case the "accidental fire or other casualty" was the proximate cause of the damage, as ascertained and reported by the appraiser. It has been suggested that some of the damage may have been caused by rust accumulated during the voyage. It is a sufficient answer to this to say that, if there was any such damage during the voyage, it must be assumed that the appraiser did not include the same as an element of his estimate of 70 per centum, but included only such elements as were directly the result of said casualty.

A leading case on the subject of proximate cause is The G. R. Booth, 171 U. S. 450, 19 S. Ct. 9, 13, 43 L. Ed. 234. In that case the steamship G. R. Booth was lying at the dock in the waters of the harbor of New York, discharging a general cargo, laden at Hamburg for delivery at New York City. Some detonators were included within the cargo, having been packed according to the regulations of the German law. While the cargo was being unladen some of these detonators exploded, making a large hole in the side of the ship, by means of which hole sea water entered the hold and injured a considerable amount of sugar included within the cargo. The importers libeled the ship for said damages to the cargo. The bill of lading, under which said sugar was carried, provided that the ship should not be liable for loss or damage occasioned by the perils of the sea, and defense was made upon the theory that the damage was so caused.

The Supreme Court, speaking through Mr. Justice Gray, reviewed the authorities at considerable length, and, after doing so, held the defense to be unavailable, and that the primary and efficient cause of the damage was the explosion. In doing so, it was said: "* * * It was the primary and efficient cause, the one that necessarily set the force of the water in operation. It was the superior or controlling agency, of which the water was the incident or instrument. The inflow of the sea water was not an intermediate cause, disconnected from the primary cause, and self-operating; it was not a new and independent cause of damage; but, on the contrary, it was an incident, a necessary incident and consequence, of the explosion; and it was one of a continuous chain of events brought into being by the explosion—events so linked together as to form one continuous whole."

Other cases in point are Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 179, 29 S. Ct. 270, 53 L. Ed. 453; Charbonnier et al. v. United States (D. C.) 45 F.(2d) 166; Snider v. Sand Springs Ry. Co. (C. C. A.) 62 F.(2d) 635.

Applying this principle there seems to be no doubt of the applicability of said section 563 to the case at bar, even though rust may have been found upon the iron and steel parts, after the casualty. The damage to the knitting machinery here involved, as found by the appraiser, was "actual injury or destruction, in whole or in part," of the same, by "accidental fire or other casualty," to the extent of 70 per centum.

We, therefore, conclude that the United States Customs Court was in error in disallowing the claim of the appellant, and its judgment is reversed and the cause remanded, with instructions to order an abatement or refund of the duties upon said knitting machinery to the extent of 70 per centum thereof.