## UBERTI & CIA *v.* UNITED STATES (No. 2429).[1]

CONSTRUCTION, SECTION 563, TARIFF ACT OF 1922—DAMAGE IN BONDED WAREHOUSE.

Section 563, tariff act of 1922, authorizes the Board of United States General Appraisers to order abatement or refund of duty in case of damage by casualty to imported merchandise while in bonded warehouse. There is nothing in the law to restrict the operation of the section to merchandise on which the duty has not been paid; and the judgment of the Board of United States General Appraisers declining to order a refund where imported cheese was damaged by fire in bonded warehouse after duty had been paid is reversed.

United States Court of Customs Appeals, November 22, 1924

APPEAL from Board of United States General Appraisers, Abstract 47226

[Reversed.]

*B. A. Levett* for appellants.

*William W. Hoppin,* Assistant Attorney General (*Oscar Igstaedter* and *William H. Futrell,* special attorneys, of counsel), for the United States.

[Oral argument October 22, 1924, by Mr. Levett and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellants on July 9, 1923, entered and placed in a bonded warehouse 800 cases of cheese. On July 27, 1923, duty was paid by importers on the merchandise. On July 28, 1923, 300 cases were delivered to the importers and on August 15, 1923, 20 cases were exported with benefit of drawback. The remaining 480 cases upon which duty had been paid and for which delivery permit had been issued were on the 26th day of August, 1923, damaged by fire while in the warehouse. All of the merchandise remaining in the warehouse after the fire, was withdrawn on October 15, 1923.

On September 24, 1923, the importers applied to the Board of General Appraisers for an abatement in accordance with section 563 of the tariff act of 1922, which is as follows:

In no case shall there be any abatement or allowance made in the duties for any injury, deterioration, loss, or damage sustained by any merchandise while

---

[1] T. D. 40523.

remaining in a bonded warehouse: *Provided,* That upon the production of satisfactory proof to the Board of General Appraisers of actual injury or destruction, in whole or in part, of any merchandise, by accidental fire or other casualty, while in bonded warehouse, or in the appraiser's stores undergoing appraisal, or while in transportation under bond from one port to another, or while in the custody of the officers of the customs, although not in bond, or while within the limits of any port of entry, and before the same has been landed from the importing vessel or vehicle, such board is hereby authorized to order an abatement or refund, as the case may be, and the Secretary of the Treasury is authorized to pay, out of any moneys in the Treasury not otherwise appropriated, the amount of duties paid.   Notice in writing shall be filed with the collector of the district in which such actual injury or destruction was sustained or occurred, and the collector shall transmit such notice together with all papers and documents to the board for due assignment and determination and such determination shall be final and conclusive upon all persons interested therein except in cases where an appeal may be filed by either party in the United States Court of Customs Appeals within the time and in the manner provided by law.

The board refused to allow the claim, and the importers appealed to this court under the provisions of said section.   In the opinion of the board is found the following:

There seems to be no contest as to the amount of damage sustained, as reported by the appraiser, but the Government insists that because the duty had been paid the interest of the Government had been satisfied, and having no longer any interest to protect for itself, nor any obligation to protect the property of the importer, it could not be held liable to lose the duty on the merchandise damaged.   The only difference we are able to discern between the case at bar and the case cited is the difference in the dates.   The fact remains undisputed that the duty had been paid thirty days before the fire occurred.   From that moment the relation of bailor and bailee existed only between the importer and the warehouseman.   The Government was no longer concerned, either for its own interest or the interest of the importer.   It is clear that the importer so understood the change in the relationship, for he had withdrawn a large quantity of the merchandise before the fire, but for the portion thereof which he did not so withdraw, he must look to the warehouseman alone.   The allowance prayed for is denied.

Section 563, we think, was intended by Congress to provide a means of securing relief to importers where goods had been destroyed or damaged either before or after paying duties, and for which misfortune former laws provided no adequate remedy.   The section provides that duty may be abated or refunded under five different circumstances if the merchandise upon which the duty accrued was injured or destroyed, in whole or in part:

(1)   While in bonded warehouse;

(2)   In the appraiser's stores undergoing appraisal;

(3)   While in transportation under bond from one port to another;

(4)   While in the custody of the officers of the customs, although not in bond;

(5)   While within the limits of any port of entry and before the same has been landed from the importing vessel or vehicle.

It is the position of the Government, and while the opinion of the board does not clearly so state, we take it that it was also the opinion of the board, that; while it is clear that the damaged merchandise was in a bonded warehouse, it was not in a bonded warehouse within the meaning of section 563 so as to entitle the importer to the relief the section provided for. It is contended by the Government that, "While in bonded warehouse" should be construed to mean the same as if it read, "While in bonded warehouse under the custody of officers of the customs for duty purposes." We do not agree with this line of reasoning, nor can we see how such interpretation could possibly be given to the plain words used without supplying omissions or making additions which would, in our judgment, amount to legislation. The section plainly states that, if the injury or destruction occurs to the merchandise while in bonded warehouse, the board is authorized to order a refund. It is urged by the board and the Government that, since the duties had been paid and the withdrawal permit issued, it was of no more concern to the Government; that there were no contractual relations existing between them; that the Government did not stand in the relation of a bailee and was in no sense liable or responsible for damage; and that, the duties having been paid and the withdrawal permit issued, the transaction was closed to such an extent that Congress never intended that the duties should be refunded under the provision "while in bonded warehouse."

Let us inquire into the purpose of the enactment, and, if possible, point out the way for carrying out the wishes of the legislative body. The Government has a lien for duties when goods cross the customs border, but Congress has provided that the goods can be abandoned and the duty abated, or that they may be exported without the payment of duty. The sovereign Government has the right and the power to take the duties accruing under the foregoing circumstances, but, recognizing the injustice in doing so, Congress has provided different remedies for relief. The tariff act of 1922 in its preamble provides that it is "to provide revenue * * * to encourage the industries of the United States." In other words, it is to raise revenue and afford protection to American industries. We think this section, while forbidding indiscriminate abatement and refunding of duties, requires that duties which accrued upon imported merchandise which was injured or destroyed while under any of the five conditions mentioned, shall be abated or refunded. The goods never entered the commerce of the country, and, therefore, did not tend to discourage the industries of the United States. The failure to refund the duties would not afford any protection under the act, and we think that Congress had in mind cases like the one at bar when they enacted the section.

We are confirmed in this view more emphatically after having examined section 557 which relates to the drawback for goods exported from warehouse.    We quote from the proviso in the section:

*Provided,* That the total period of time for which such merchandise may remain in bonded warehouse shall not exceed three years.   Merchandise upon which the duties have been paid and which shall have remained , continuously in bonded warehouse or otherwise in the custody and under the control of customs officers, may be entered or withdrawn at any time within three years after the date of importation for exportation, or for transportation and exportation, under such regulations as the Secretary of the Treasury shall prescribe, and upon such entry or withdrawal, 99 per centum of the duties thereon shall be refunded.

Here it is provided that, where goods are in a bonded warehouse continuously even for a period of three years, and even if the duties have been paid, they may be exported and the duties will be refunded. This we regard as a clear indication that Congress did not want to exact and retain duties upon goods which did not become a part of the commerce of the country.   In view of the language used may we not also impute to it the same sense of fairness and justice when applied to goods which were injured or destroyed?

We do not think it necessary for us to decide the question as to whether they were in the custody of the officers of the customs or not, since it is clear that they were in a bonded warehouse.

The judgment of the Board of General Appraisers is *reversed.*