KNAUTH, NACHOD & KUHNE *v.* UNITED STATES (No. 2467) [1]

1. DUTIES, ABATEMENT AND REFUND—ALLOWANCE FOR LOSS—SECTION 563, TARIFF ACT OF 1922.

Section 563, Tariff Act of 1922, authorizes the Board of United States General Appraisers to order abatement or refund of duty in case of damage by casualty to imported merchandise while in bonded warehouse. There is nothing in the law to restrict the operation of the section to merchandise on which the duty has not been paid; if paid, an importer is entitled to a refund, if not, to an abatement, in whole or in part, according to the amount of damage. *Uberti & Cia* v. *United States*, 12 Ct. Cust. Appls. 373.

2. EVIDENCE, PROOF OF LOSS UNDER SECTION 563, TARIFF ACT OF 1922—PRESUMPTION OF REGULARITY OF OFFICIAL ACTION.

The Customs Regulations hold storekeepers of bonded warehouses to a very strict accountability. Customs Regulations 1923, articles 721, 722, 842, and 843. As in all other cases, these officers will be presumed to have discharged their duty. Where 70 cases of merchandise were in warehouse and 59 of them were reported damaged by fire and the others missing, it must be presumed that they were destroyed; and the Board of United States General Appraisers should have ordered a refund of duty on the basis of the reported damage to the 59 cases and the loss of the others, under section 563, Tariff Act of 1922, providing for abatement or refund of duty in case of casualty to goods in bonded warehouses.

United States Court of Customs Appeals, December 4, 1925

APPEAL from Board of United States General Appraisers, Abstract 47805

[Reversed and remanded.]

*William L. Wemple* for appellants.

*William W. Hoppin*, Assistant Attorney General (*Jerome G. Clifford*, special attorney, of counsel), for the United States.

---

[1] T. D. 41234.

[Oral argument Oct. 29, 1925, by Mr. Wemple and Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

Section 563 of the Tariff Act of 1922 contains the following provision:

ALLOWANCE FOR LOSS—ABANDONMENT.—In no case shall there be any abatement or allowance made in the duties for any injury, deterioration, loss, or damage sustained by any merchandise while remaining in a bonded warehouse: *Provided,* That upon the production of satisfactory proof to the Board of General Appraisers of actual injury or destruction, in whole or in part, of any merchandise, by accidental fire or other casualty, while in bonded warehouse, * * * such board is hereby authorized to order an abatement or refund, as the case may be, and the Secretary of the Treasury is authorized to pay, out of any moneys in the Treasury not otherwise appropriated, the amount of duties paid. Notice in writing shall be filed with the collector of the district in which such actual injury or destruction was sustained or occurred, and the collector shall transmit such notice together with all papers and documents to the board for due assignment and determination, and such determination shall be final and conclusive upon all persons interested therein except in cases where an appeal may be filed by either party in the United States Court of Customs Appeals within the time and in the manner provided by law. * * *

The case here is an appeal, under said section, by importers, from the denial by the Board of General Appraisers of an application for abatement or allowance in duties by reason of damage to imported merchandise caused by fire or other casualty while the same was in bonded warehouse.

When the application came on for hearing before the board, the case was submitted on the papers forwarded by the collector to the board without other evidence. These papers are the importers' application for the abatement or allowance (to which is annexed the collector's order to the appraiser directing him to ascertain and report the damage), the appraiser's report of damage, and the report of the storekeeper of the bonded warehouse in which the goods were placed.

All these papers, with the exception of importers' application, emanated from Government officials, all refer to the same 70 cases of merchandise described in said application, and there is no question as to their identity.

From these papers it appears that the 70 cases were imported and placed in bonded warehouse about June 12, 1923; that they remained there until August 26 following, at which time a fire occurred; and that 59 cases were damaged, 39 thereof, 65 per centum, and 20, 90 per centum, as shown by the appraiser's report. That officer did not, however, state the damage as to the other 11 cases, saying in his report " they were not produced for examination; said to have

been destroyed by fire." The appraiser's report is dated April 17, 1924, and the storekeeper's report April 24, 1924. In his report, the storekeeper says the merchandise was in the bonded warehouse and in his custody "on the day it was damaged as noted below, caused by a fire which occurred at the warehouse at that time * * * date of fire August 26/23 * * * damaged by fire and water." His report contains no statement, nor is any inference to be drawn therefrom, that any of the 70 cases were withdrawn or removed from the warehouse. The appraiser's report does not state or indicate where the merchandise was when he ascertained the damages.

The board denied the application. We quote the material part of its opinion:

Part of the goods was not produced for examination by the appraiser and there was no other testimony offered as to their injury or destruction. While the appraiser reports the amount of injury on the rest of the merchandise, there is no evidence as to when the duty was paid. From June 12, 1923, to August 26, 1923, would count two and one-half months, ample time in which to withdraw the goods, if the duty had been paid, which would have ended the bailment of the Government by discharging the Government's interest therein.

It is explained in the oral argument that probably the statements in the opinion below, that there was no evidence showing when the duty was paid, and that there had been ample time to withdraw the goods between June 12 and August 26, if it had been paid, in which case the Government's bailment and interest in the goods would have been discharged, were predicated upon a view once entertained by the board that, if the duties had been paid and the merchandise thereafter remained in bonded warehouse and was damaged or destroyed there by fire or other casualty, an importer was not entitled to relief under section 563.

We do not concur in this interpretation of the section. In *Uberti & Cia. v. United States*, 12 Ct. Cust. Appls. 373, we held that in cases where the loss or damage had been established as provided in the statute, an importer's right to relief was not affected by the payment or nonpayment of the duties; that is to say, that if paid, the importer would be entitled to a refund; if not paid, to an abatement, in whole or in part, according to the damage to the merchandise.

The Government admits that the importers here are entitled to an abatement or refund on 59 cases, on the basis of the damage thereto as reported by the appraiser, but contends that as to the 11 cases they are remediless, because no damage thereto was reported by him, and that is the sole issue in this case.

Before considering the evidence on this issue we note that the customs regulations in force at the time the merchandise was placed

in the bonded warehouse, and now, provide that storekeepers of bonded warehouses shall personally open and lock the same; that all goods will be received. and delivered by storekeepers òr under their supervision; that they shall keep a correct account of all goods received and delivered and make daily returns thereof; also that no goods shall be delivered from such warehouses except upon presentation of a permit to the storekeeper signed by the proper customs official.   Customs Regulations of 1923, articles 842 and 843; Customs Regulations of 1923, articles 721 and 722.  .

There is nothing in the papers to show, nor is it claimed, that these 11 cases were not, in fact, destroyed; neither is it stated in the storekeeper's report, made at a date later than the appraiser's report of damage, that any permit for delivery of the 11 cases had been presented to him, nor that they had been at any time discharged from the warehouse or delivered to importers; but, on the contrary, the storekeeper states that they were in the warehouse at the date of the fire.   The Government's case rests upon the proposition that importers should have produced some further affirmative proof of the destruction of or damage to the 11 cases.

It must be borne in mind that this case is not a review of any action of the collector which is presumed to be correct; also that the section requires the production of satisfactory proof to the Board of General Appraisers in the first instance, and to this court on appeal, of the actual injury or destruction, in whole or in part, of the merchandise in bonded warehouse, in order to entitle importers to relief.

We are clear that the importers have fully discharged the burden thus cast upon them.   They have shown by the storekeeper that all the merchandise was in the Government's possession at the time of the fire and was damaged by fire and water.   They have shown, by the appraiser, that 11 cases were not produced but said to have been destroyed by fire.   If any of the cases had been removed at any time by anyone before the appraiser made his examination, the presumption is that the storekeeper would have so reported.

Just how they might have proven that the missing cases were in fact destroyed, further than they have done, is not pointed out. Such proof would, of course, under the circumstances, come from customs officers or employees.   The appraiser was directed to ascertain the damage.   To do that he must see the merchandise, if in existence.   He did this so far as he could.   As to what he did not see, he could only report that it was said to be destroyed, and the report of the storekeeper confirms that statement.

In this connection it may be noted that in the affidavit attached to the petition the affiant, acting for importers, stated that the merchandise had not been examined by him, and that "the reason for

nonexamination by me was prevented by the warehouse and believe that the above casualties [have] taken place."

In this state of the record we think it was incumbent upon the Government to account, if it could, for the missing cases which, when last in existence, were shown to be in its custody, and that its failure so to do raises the presumption that they were destroyed.

The opinion of the board discloses no reason other than its erroneous view of the law, why it did not sustain the petition, at least as to the 59 cases, and it is reasonable to believe that had the board correctly applied the law, it would have found that the missing cases were destroyed. We think the importers were entitled to such a finding.

The Government suggests that the 11 cases may have been surreptitiously withdrawn or removed from the warehouse. We regard this as an insinuation not necessary to discuss.

Adopting the rule applied in other cases in this court, that the finding of the board will be set aside when not supported by the evidence, or when contrary to the weight of the evidence, we hold that the judgment below must be, and it is, reversed; and the cause is remanded to the end that the value of the 11 missing cases be ascertained and an abatement or refund of duties ordered by the Board of General Appraisers as to the 70 cases, as provided in said section 563.

*Reversed* and *remanded*.