(C. D. 398)

Vulcan Match Co., Inc. v. United States

United States Customs Court, First Division

(Decided November 15, 1940)

*Harper & Harper (Abraham Gottfried* of counsel) for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before Brown and Walker, Judges

Walker, Judge: This is a suit against the United States which arose at the port of Los Angeles wherein the plaintiff claims that the liquidation made by the collector of customs at that port of certain antidumping duties was based upon a so-called antidumping appraisement which was illegal and void in that it did not comply with the provisions of regulations prescribed by the Secretary of the Treasury pursuant to authority conferred in the Antidumping Act of 1921.

When the case was called for trial counsel for the plaintiff moved that the record in reappraisement 104400–A, *Guy B. Barham Co.* v. *United States*, covering the identical merchandise and between the same parties as the protest at bar, be received in evidence under the provision in Rule 25 of this court which reads as follows:

> The record in a reappraisement proceeding, before a single judge (including samples, testimony, exhibits, and record of proceedings) may, in the discretion of the court, be admitted in evidence in any other proceeding involving similar merchandise or an issue arising upon the same state of facts.

Objection to the motion was made by counsel for the Government on the grounds (1) that the issue in reappraisement and classification cases is dissimilar, (2) that no excuse was shown why the witnesses in the reappraisement proceeding could not have been produced to testify on the trial of the present case, and (3) that Rule 25 permits the admission in evidence of the record made on a reappraisement proceeding only in another reappraisement proceeding. Ruling on the objections was reserved, the usual exception to the party ruled against being granted, and the case was submitted, time being allowed for briefs.

The record offered was made in reappraisement proceedings which were initiated by way of an appeal to reappraisement by the Customs Court from findings of value made by the appraiser as to the merchandise which forms the basis for the present suit. At the hearing on said appeal plaintiff attacked the validity of the appraisement made under the antidumping act, *supra*, by introducing testimony to establish failure of compliance, on the defendant's part, with the applicable customs regulations, but the final judgment in the case dismissed the appeal for a jurisdictional defect, i. e., that it was taken, not against the findings made under the antidumping act, but against the findings of value made under the provisions of the Tariff Act of 1930.

It might not be amiss to point out here that in a later case, *United States* v. *C. J. Tower & Sons*, 24 C. C. P. A. 456, T. D. 48912, the Court of Customs and Patent Appeals subsequently held that failure to refer to dumping duties in the notices of appeal to reappraisement does not render such notices insufficient as a matter of law, but that

appeals which advise the court that the appellant is dissatisfied with the appraisement, that is, with the value found by the local appraiser, are sufficient to meet the requirement of the statute. Thus it would appear that this court was in error when it dismissed the reappraisement appeal.

Liquidation of the entry followed in regular course after such dismissal, based upon the values returned by the appraiser both under the antidumping act and the Tariff Act of 1930, and the present suit was commenced by a protest filed within the statutory time following such liquidation.

There can be no doubt that the issue of the validity of appraisement, whether under the antidumping act or the tariff act, can be raised either by reappraisement proceedings or by a suit brought by way of protest. *United States* v. *Central Vermont Railway Co.*, 17 C. C. P. A. 166, T. D. 43474; *United States* v. *Porto Rico Coal Co.*, 17 id. 288, T. D. 43716, and *United States* v. *Gilson Bros.*, 20 id. 117, T. D. 45753. There is no requirement that an election of remedies be made since they are not inconsistent remedies. The distinction is that in the one case direct attack is made upon the appraisement, whereas in the other a collateral attack is made, and the fact that the appraisement has become final under the provisions of section 501 of the Tariff Act of 1930 or section 210 of the antidumping act so as to bar direct appeal therefrom does not prevent the bringing of a suit for the purpose of reviewing the validity of a *liquidation* made by the collector based upon such alleged illegal appraisement. Had the reappraisement proceedings culminated in a determination of the validity of the appraisement adverse to the plaintiff's claim prosecution of the present suit would be barred on the ground of *res adjudicata*. Such is not the fact in the case at bar. The appeal to reappraisement was dismissed because of a defect in the plaintiff's pleading therein. Under such circumstances there was no determination of the question of the validity of the appraisement and therefore no room for the application of the doctrine of *res adjudicata*.

The general rule as to the admissibility of former evidence requires that there be a showing that it is impossible to produce the witness who testified. This requirement is probably based upon the theory that testimony given in a former trial is secondary evidence. *Dover* v. *Greenwood*, 177 Fed. 946. The general rule, however, has been modified insofar as it applies to customs practice. In such cases there is no requirement of a showing that it is impossible to present the witnesses for reexamination or recross examination, since such requirement would seriously hamper the expeditious adjudication thereof to the detriment of commerce, industry, agriculture, finance, and the revenue of the Government. *United States* v. *Bosca, Reed, MacKinnon Co. et al.*, 24 C. C. P. A. 364, 370, T. D. 48829, citing *United States*

v. *Stone & Downer Co.*, 274 U. S. 225, 235. The only requirement is that where the parties to the pending suit are different from the parties in the previous case the opposing party should be afforded the opportunity to examine or cross-examine the witnesses whose testimony is sought to be admitted or incorporated.

In the case at bar the parties to the pending and previous cases are the same, the merchandise is the identical merchandise, and the issue, the validity of the appraisement under the antidumping statute, is the same. Under such circumstances if the opposing party wished to examine or cross-examine any of the witnesses whose testimony is sought to be admitted it should have made a motion addressed to the discretion of the court to permit the admission of the record only on the terms that the desired witnesses be produced for that purpose, and having failed to do so it cannot be heard now to complain that the record in the previous case was inaccurate or incomplete.

The foregoing disposes of the Government's first two grounds of objection. The sole remaining ground is based upon the contention that Rule 25 permits the admission in evidence of the record made on a prior reappraisement proceeding only in a subsequent reappraisement proceeding. The rule provides that "The record in a reappraisement proceeding, before a single judge * * * may * * * be admitted in evidence in any other proceeding involving similar merchandise or an issue arising upon the same state of facts." If the evidence offered on the trial of the reappraisement proceeding were of such a character, i. e., affidavits, as to be inadmissible on the trial of a classification case, the objection made by the Government would have merit. The fact is, however, that the evidence offered in the reappraisement proceeding with which we are here concerned consisted solely of oral testimony properly admissible in classification cases, and we can see no reason why it should not be admitted in evidence herein.

The objections of the Government to the admission of the record offered are all overruled, and it is admitted in evidence herein.

The merchandise involved consists of Swedish matches. On March 23, 1931, the Secretary of the Treasury made a finding of dumping which was published in T. D. 44717 pursuant to the provisions of section 201 (a) of the Antidumping Act of 1921 which read as follows:

That whenever the Secretary of the Treasury (hereinafter in this act called the "Secretary"), after such investigation as he deems necessary, finds that an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation into the United States of a class or kind of foreign merchandise, and that merchandise of such class or kind is being sold or is likely to be sold in the United States or elsewhere at less than its fair value, then he shall make such finding public to the extent he deems necessary, together with a description of the class or kind of merchandise to which it applies in such detail as may be necessary for the guidance of the appraising officers.

The merchandise in issue was imported and entered on December 11, 1931, nearly 9 months after the publication of such finding. The Customs Regulations of 1931, as they were in force and effect at the time of such importation, applicable to cases where a finding of dumping had been published by the Secretary read as follows:

Art. 796. Action by appraiser when Secretary has made public a finding—
(a) Antidumping Act, 1921, section 202 (b):

If it is established to the satisfaction of the appraising officers that the amount of such difference between the purchase price and the foreign market value is wholly or partly due to the fact that the wholesale quantities, in which such or similar merchandise is sold or freely offered for sale to all purchasers for exportation to the United States in the ordinary course of trade, are greater than the wholesale quantities in which such or similar merchandise is sold or freely offered for sale to all purchasers in the principal markets of the country of exportation in the ordinary course of trade for home consumption (or, if not sold or offered for sale for home consumption, then for exportation to countries other than the United States), then due allowance shall be made therefor in determining the foreign market value for the purposes of this section.

(b) Antidumping Act, 1921, sec. 202 (c):

If it is established to the satisfaction of the appraising officers that the amount of such difference between the exporter's sales price and the foreign market value is wholly or partly due to the fact that the wholesale quantities, in which such or similar merchandise is sold or freely offered for sale to all purchasers in the principal markets of the United States in the ordinary course of trade, are greater than the wholesale quantities in which such or similar merchandise is sold or freely offered for sale to all purchasers in the principal markets of the country of exportation in the ordinary course of trade for home consumption (or, if not so sold or offered for sale for home consumption, then for exportation to countries other than the United States), then due allowance shall be made therefor in determining the foreign market value for the purposes of this section.

(c) In the case of imported merchandise of a class or kind as to which the Secretary has made public a finding as provided for in section 201 (a), the provisions of article 792 relating to appearance of the importer and requiring affidavits shall be followed. If the appraiser is satisfied that the purchase price or the exporter's sales price is not less than foreign market value (or cost of production), he may pass the merchandise in the usual manner and make his report to the collector on the form provided for in this article of regulations.

(d) Antidumping Act, 1921, section 209:

That in the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary has made public a finding as provided in section 201, and as to which the appraiser or person acting as appraiser has made no appraisement report to the collector before such finding has been so made public, it shall be the duty of each appraiser or person acting as appraiser, by all reasonable ways and means to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost of production to the contrary notwithstanding) and report to the collector the foreign market value or the cost of production, as the case may be, the purchase price, and the exporter's sales price, and any other facts which the Secretary may deem necessary for the purposes of this title.

(e) The report of the appraiser shall be made in the following form:

*Appraisement report under antidumping act, 1921.*

Finding of the Secretary dated ＿＿＿＿＿＿.
T. D. ＿＿＿＿＿ applies.

The importer of this merchandise is an$\left\{\begin{array}{l}\text{importer}\\\text{exporter}\end{array}\right\}$under the law.

Foreign market value on date of purchase ＿＿＿＿＿.
Purchase price (sec. 203) ＿＿＿＿＿.
Foreign market value on date of exportation .＿＿＿＿＿.
Exporter's sales price (sec. 204) ＿＿＿＿＿
Cost of production ＿＿＿＿＿.

(f) Whenever merchandise has been purchased by a person who is not an exporter within the meaning of section 207 of the act, the appraiser shall report the purchase price and the foreign market value on the date of purchase (or in the absence of such value, the cost of production).

(g) Whenever merchandise is imported by a person who is an exporter within the meaning of section 207 of the act the appraiser shall report the exporter's sales price and the foreign market value on date of exportation (or, in the absence of such value, the cost of production).

(h) Whenever an importer has filed an affidavit on Form 4 that the merchandise will not be sold in the United States, the appraiser, if he has no evidence to the contrary, shall report "Merchandise will not be sold in the United States."

(i) Whenever an importer has filed an affidavit on Form 3 and no report of the exporter's sales price has been received within six months after the date of entry, the appraiser shall ascertain whether the merchandise has been sold or freely offered for sale, and if so at what price, or the disposition or probable disposition of such merchandise if not sold. If the appraiser ascertains that no sale of the merchandise has been made and that no likelihood of a sale exists he shall return the invoice to the collector with a statement of the facts as he finds them.

The provisions of article 792, referred to in article 796, insofar as they relate to "appearance of the importer and requiring affidavits" are contained in subdivisions (b) to (g) inclusive, thereof, which read as follows: ·

(b) When the appraiser has reason to believe or suspect that merchandise is imported in violation of the antidumping act, he shall immediately request the importer thereof or his authorized agent to appear before him in order that he may obtain whatever information the importer or his agent may have relative to the matter.

(c) Upon the appearance of the importer or his agent, he shall be questioned in order to ascertain—

First: The person by whom or for whose account the merchandise is imported.

Second: The facts necessary to establish whether such person is or is not the exporter within the meaning of section 207.

Third: The nature and amount of each item to be added to or deducted from the basic price in accordance with sec. 203 or sec. 204, in order to determine the purchase price or the exporter's sales price, as the case may be.

Fourth: His knowledge if any, of the wholesale foreign market value, the price to countries other than the United States, or the cost of production.

Fifth: The reason for the price differential.

Sixth: The relative wholesale quantities, if the difference in such quantities is claimed in whole or in part as the reason for the price differential.

(d) If the appraising officer is then satisfied that there is no reasonable ground for his belief or suspicion he may pass the merchandise in the usual manner without giving notice to the Secretary.

(e) If the appraiser is not satisfied, he shall require the importer or his agent to file an affidavit on one of the following forms, according to the circumstances of the case:

## FORM 1

### *Nonexporter's affidavit*

(Antidumping act of 1921)

Re: Entry No. _____.  Consular Invoice No. _____

Certified at _____ on _____

Import vessel or carrier _____ arrived _____, 19 ___.

----

I, _____ _____, do hereby solemnly swear that I am not the exporter as defined in section 207 of the act of May 27, 1921, of the merchandise covered by the aforesaid entry. I further declare that the merchandise was purchased on _____ and that the purchase price is _____.

(Signed) _____ _____

Subscribed and sworn to before me this _____ day of _____, 19___.

_____ _____

## FORM 2

### *Exporter's affidavit where sales price is known*

(Antidumping act of 1921)

Re: Entry No. _____.  Consular Invoice No. _____.

Certified at _____ on _____.

Import vessel or carrier _____. Arrived _____ 19___.

----

I, _____ _____, do solemnly swear that I am the exporter as defined in section 207 of the act of May 27, 1921, of the merchandise covered by the aforesaid entry; that the merchandise is sold or agreed to be sold at the prices stated in the attached statement; that, if any or all of the aforesaid items are actually sold at prices different from those set forth in the attached statement, I will immediately notify the appraiser in detail.

The merchandise was acquired by me in the following manner: _____, and has been sold or agreed to be sold to _____ at _____.

(State price.)

(Signed) _____ _____.

Subscribed and sworn to before me this _____ day of _____, 19___.

_____ _____,

_____ _____.

## FORM 3

### *Exporter's affidavit where sales price is not known*

(Antidumping act of 1921)

Re: Entry No. _____.  Consular Invoice No. _____.

Certified at _____ on _____.

Import vessel or carrier _____. Arrived _____ 19___.

----

I, _____ _____, do hereby solemnly swear that I am the exporter as defined in section 207 of the act of May 27, 1921, of the merchandise covered by the aforesaid entry, and that the prices at which the various items will be sold in the United States are not known. I hereby stipulate that I will keep a record of the sales and furnish the appraiser with a sworn statement showing the detailed prices of the various items, within 30 days after the sale thereof. I further stipu-

late that at the end of six months from the date of entry if the merchandise has not been sold or agreed to be sold, in whole or in part, I will so report to the appraiser.

This merchandise was acquired by me in the following manner: _____

(Signed) _____ _____.

Subscribed and sworn to before me this _____ day of _____, 19___.

_____ _____,

_____.

### FORM 4

*Exporter's affidavit where merchandise is not sold and will not be sold*

(Antidumping act of 1921)

Re: Entry No. _____. Consular Invoice No. _____.

Certified at _____ on _____.

Vessel or carrier _____. Arrived _____, 19___.

I, _____ _____, do hereby solemnly swear that I am the exporter as defined in section 207 of the act of May 27, 1921, of the merchandise covered by the aforesaid entry, and that such merchandise will not be sold in the United States for the following reasons: _____.

(Signed) _____ _____,

_____.

Subscribed and sworn to before me this _____ day of _____, 19___.

_____ _____,

_____.

(*f*) On all subsequent importations by the same person of merchandise of the same class or kind as that under investigation the appraiser may waive any further appearance by the importer, provided the importer or his agent attaches to the invoice at time of entry the necessary affidavit.

(*g*) The appraiser shall use the facilities at his disposal to secure the appearance of importers, the filing of affidavits, and when necessary, proof of exporters' sales prices, or proof of nonsales, referring such of these matters as he may deem advisable to the customs agent in charge of the district for investigation.

Milo M. Mullen, the appraiser of merchandise at the port of Los Angeles at the time the merchandise in issue was entered and appraised, testified on the trial of the reappraisement proceeding, the record in which has been admitted in evidence herein, that neither the importer nor his agent had been requested to appear before him to give information or to file an affidavit; that he had never questioned the importer or his agent in order to ascertain the information set forth in article 792 (*c*), and that he had never attempted to secure the appearance of the importers, the filing of affidavits, or proof of exporters' sales prices or proof of nonsales.

Some question was raised on the reappraisement hearings as to whether the appraiser was required to send to the importer a notice of withholding appraisement under the provisions of article 792 (*i*) and (*m*), but it appears that such notice is required only in cases where no finding of dumping has been published by the Secretary of the Treasury.

While in form the requirements of the quoted portions of articles 792 and 796 appear to be concerned solely with the acquisition of information by the appraiser upon which his appraisement and report will be based, nevertheless, it cannot be denied that if complied with they confer upon the importer a substantial right to the protection of his property, viz, that of furnishing information to the appraiser upon the basis of which a determination of the status of his merchandise depends. For this reason we are satisfied that the regulations are mandatory in character and that compliance therewith is a condition precedent to a valid appraisement under the antidumping act. Such regulations have the force and effect of law.

In *United States* v. *V. W. Davis*, 20 C. C. P. A. 305, T. D. 46087, our appellate court, in passing upon a similar issue, quoted the following from *French* v. *Edwards*, 13 Wall. 506, concerning the distinction between directory and mandatory statutes:

There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system, and dispatch in proceedings, and by a disregard of which the rights of parties interested cannct be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. *But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be. and generally would be injuriously affected, they are not directory but mandatory.* They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise. [Italics added.]

We are of opinion that the foregoing language is directly applicable to the regulations here in question, and that tested thereby the regulations are mandatory in nature.

The appraisement under the antidumping act was therefore illegally made, and the liquidation based thereon must be held to be void. The protest is therefore sustained and judgment will issue accordingly.