HENRY W. PEABODY & CO. *v.* UNITED STATES

No. 7839.—
Entry No. 28878, etc.

(Decided June 12, 1950)

*Benjamin A. Levett* (*Benjamin A. Levett* and *Meyer Ohlbaum* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Daniel I. Auster* and *Guy Gilbert Ribaudo,* special attorneys), for the defendant.

MOLLISON, Judge: These are appeals for reappraisement of values found by the appraiser under the Antidumping Act of 1921 (19 U. S. C. § 161 *et seq.*) on importations of matches from Finland. In his opening statement at the trial, counsel for the plaintiff indicated that the plaintiff had little, if any, evidence to offer on the merits of the issue, i. e., the values, but that the main contention to be made was that each of the appraisements was invalid.

Counsel for the plaintiff and for the defendant stipulated facts which would indicate that there was neither a sufficient designation of packages or quantities for examination nor a sufficient examination of the involved merchandise under the provisions of section 499 of the Tariff Act of 1930, as it existed prior to the passage of the Customs Administrative Act of 1938 (52 Stat. 1077). However, the latter act amended section 499, *supra,* by adding thereto the following provisions:

No appraisement made after the effective date of the Customs Administrative Act of 1938 shall be held invalid on the ground that the required number of packages or the required quantity of the merchandise was not designated for examination or, if designated, was not actually examined, *unless the party claiming such invalidity shall establish that merchandise in the packages or quantities not designated for examination, or not actually examined, was different from that actually examined and that the difference was such as to establish the incorrectness of the appraiser's return of value; and then only as to the merchandise for which the value returned by the appraiser is shown to be incorrect.* [Italics added.]

All of the appraisements involved were made after the effective date of the Customs Administrative Act of 1938, and no effort was made on plaintiff's behalf to establish any of the facts called for by the italicized portion of the above quotation. In this situation the court is without power to declare the appraisements invalid on the ground of insufficient designation and/or examination of packages or quantities.

Counsel for the plaintiff has advanced another ground, however, of claimed invalidity of the appraisements. This ground is stated in the brief filed on behalf of the plaintiff as follows:

\* \* \* It is claimed however, that the law and the regulations in effect at the time of the appraiser's returns were not complied with in that the appraiser failed to notify the importers and call them before him for questioning as to the matter.

While the law in effect at the time of appraisement of the merchandise involved herein did not specifically require that the appraiser request the importer or his agent to appear before him to give information relative to the matter, the regulations of the Secretary of the Treasury prescribed for the administration of the law made such requirement.

Article 790 (b) of the Customs Regulations of 1937, in force and effect at the time the appraisements herein were made, prescribed the following procedure by the appraiser in cases where a finding of dumping by the Secretary of the Treasury under section 201 (b) of the Antidumping Act of 1921 had not been published:

(b) When the appraiser has reason to believe or suspect that merchandise is imported in violation of the antidumping act, he shall immediately request the importer thereof or his authorized agent to appear before him in order that he may obtain whatever information the importer or his agent may have relative to the matter.

The succeeding subparagraphs of article 790 prescribe the course of conduct to be followed by the appraiser upon the appearance of the importer or his agent, involving certain facts to be ascertained by questioning, the filing of certain affidavits, and action to be taken in connection with the appraisement of the merchandise.

With respect to merchandise of a class or kind as to which the Secretary of the Treasury had published a finding of dumping, as provided for in section 201 (a) of the antidumping act, the same course of conduct relating to the appearance of the importer and requiring affidavits was prescribed in article 794 of the Customs Regulations of 1937.

The importations here involved were made at various dates during the years from 1929 to 1931. Regulations substantially similar to those contained in subparagraph (b) of article 790 of the Customs Regulations of 1937, quoted above, requiring the appraiser to request the importer or his agent to appear before him, were contained in article 792 of the Customs Regulations of 1931 and in article 713 of the Customs Regulations of 1923. Thus it may be said that such regulations were in force and effect during the entire period from the time of importation of the merchandise until its appraisement in 1941.

In the case of *Vulcan Match Co., Inc.* v. *United States*, 5 Cust. Ct. 188, C. D. 398, such regulations were held to confer upon the importer a substantial right in the protection of his property, viz, that of furnishing information to the appraiser on the basis of which a determination of the status of his imported merchandise depends, and to

be mandatory in nature, requiring compliance therewith as a condition precedent to a valid appraisement under the antidumping act.

The plaintiff herein claims that the mandatory regulations were not complied with and in support of its contention directed its efforts at the trial toward establishing that no notice or request to appear before the appraiser or any customs officer had been received by the plaintiff and that no appearance or conference at which an officer or member of the plaintiff firm had been present had ever taken place in connection with the shipments in question.

A careful review of the evidence leads to the conclusion that plaintiff failed to support its contention by sufficient competent and material evidence. At the time of the importations in question, plaintiff was a partnership composed of four general partners and one special partner. Two of the partners, one of whom had been in direct charge of the import division of the firm, were called to testify, as well as the firm's accountant at that time. The partner who had been in charge of the import division did not deny that he had ever attended any conference with the appraiser or anyone connected with the appraiser's or collector's offices, but stated that he did not recall any such incident. He stated that if there has been any request for such conference it would have come to him, and he did not recall receiving any such notice or request.

Although he stated on cross-examination that he believed that had any of the other partners had any conversations with anyone in the customs service relative to prices, sales, or purchases of matches, they would have informed him, he was, up to the time of the trial, apparently unaware that so-called "nonexporter's" affidavits, required under section 208 of the antidumping act and articles 790 and 794 of the Customs Regulations of 1937, article 792 of the Customs Regulations of 1931, and article 713 of the Customs Regulations of 1923, stating the status of the importer and the purchase price, etc., had been signed by two other partners in the firm and filed with the papers.

One of the other partners, appearing as a witness on behalf of the plaintiff, directly denied that he had ever been called upon to appear before any Government officials in connection with the shipments. He stated that he had "probably" signed certain of the "nonexporter's" affidavits bearing his signature, above referred to, but had no other knowledge of the controversy until notice of advance on appraisement had been received in 1941.

The firm's accountant at the time of the importations in question was called to the stand and stated that he had never been called by or had any conference with any Government officials in connection with the shipments.

It appears that one of the three other partners died in 1934, but neither of the other two surviving partners of the firm was called to testify, although the identified signature of one of them appears on two of the "nonexporter's" affidavits filed with the papers in the case at bar, indicating that, despite the belief expressed by plaintiff's witnesses that the said surviving partner could have had nothing to do with the matter, he must have had some contact with it.

I am of the opinion that the evidence offered on behalf of the plaintiff is not sufficient to overcome the presumption of the due performance of their duties by public officers. *Knauth, Nachod & Kuhne* v. *United States*, 13 Ct. Cust. Appls. 324, T. D. 41234. The plaintiff has not offered sufficient evidentiary facts establishing directly or by reasonable inference any ultimate fact inconsistent with the presumption that the appraiser would not omit anything which his official duty required to be done.

I therefore hold the plaintiff's contentions as to the invalidity of the appraisements to be without merit. The plaintiff has offered no evidence with respect to the values, under the provisions of the antidumping act, *supra*, of the matches involved. Examination of the official records discloses nothing which would warrant disturbing the values found by the appraiser, which are presumptively correct.

I therefore find that the proper values of the merchandise in issue are the values found by the appraiser, and judgment will issue accordingly.